**J. D. WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51541.**

Court of Criminal Appeals of Texas.

Oct. 13, 1976.

James S. Moss, Mesquite, for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GUPTON, Justice.

This is an appeal from a conviction under our former penal code for the offense of theft of a check of over the value of $50.00. Punishment was assessed at nine years in the Texas Department of Corrections.

The indictment charged in part in the first count that appellant and Pete Allmon, acting together, did then and there in the County of Jackson, State of Texas, "unlawfully and fraudulently take one check of the value of over $50.00, the same being the corporeal personal property of Belle Hamilton from the possession of the same Belle Hamilton", without her consent, "with the intent to deprive" her "of the value thereof and with intent to appropriate same to the use and benefit of them, the said J. D. Williams and Pete Allmon." The State elected to go to trial on the first count only. Appellant was tried separately.

The learned trial judge properly charged the jury on the law applicable to the case, including the definitions of "theft", "fraudulent taking", "theft by false pretext", "principals", "accomplice witness" and "corroborating evidence".

The appellant did not testify in his own behalf and rested his case without any testimony being offered by appellant.

Appellant contends in two grounds of error that the evidence is insufficient to sustain his conviction because there was no showing that at the time of taking he possessed the criminal intent to deprive the complaining witness of the value of the check, and further contends that venue was in Tarrant County rather than Jackson County. We do not agree.

The evidence shows that Pete Allmon, Norman Cowart and appellant contrived a scheme to have Pete Allmon obtain an appointment to sell insurance through First Continental Life and Accident Insurance Company of Houston, in order that Cowart and appellant could unlawfully solicit, obtain and submit applications for insurance through Allmon, as an agent, which was also prohibited by law.

All these men went to Houston to make the arrangements; then Cowart and appellant started contacting prospects and obtaining money from them by making false and incorrect representations. The officials of First Continental Life and Accident Insurance Company of Houston did not give either of them permission to sell insurance for their company.

Both Cowart and appellant contacted the 75 year old complaining witness, Belle Hamilton, of Lolita, in Jackson County. Both represented to Belle Hamilton that they were authorized insurance agents for First Continental Life and Accident Insurance Company, which was untrue. They also represented to her that their alleged insurance company had purchased and taken over the Tidelands Life Insurance Company of Corpus Christi, with whom Belle Hamilton had a policy on which the premium was paid up and in force at the time. Cowart and appellant falsely represented to Belle Hamilton that her annual premium on her "Tidelands" policy was due, all of which was false and untrue.

Belle Hamilton signed and delivered to them a check for $382.78, dated October 13, 1973, payable to the First Continental Agency. She also signed a blank application for a new insurance policy. The victim testified that she had no knowledge that she was signing papers to apply for a new insurance policy, and she did not agree to buy a new policy with any company. Because of this action of appellant and Cowart, her policy with "Tidelands" Life Insurance Company lapsed for non-payment. Belle Hamilton believed the representations of appellant and Cowart and relied on same and testified she would not have signed and delivered her check to them if she had known that it was for a "new" policy with any company. After leaving Belle Hamilton's house, both Cowart and appellant re-

turned to Fort Worth, and gave the money and application to Allmon.

The officials of First Continental Life and Accident Insurance Company of Houston became concerned about appellant, Cowart and Allmon and cancelled Allmon's appointment without granting appellant or Cowart authority to sell for their company. Appellant, Allmon and Cowart deposited the money of Belle Hamilton and others in Allmon's special account, which they opened as "First Continental Agency, Pete Allmon", in the Security State Bank in Fort Worth. After the First Continental Life and Accident Insurance Company refused to let appellant, Cowart and Allmon represent their company, appellant, Cowart and Allmon forged an application for insurance from Belle Hamilton and others to American Insurance Company in Brownwood, with whom Allmon was associated. They retained the agent's commissions and submitted the forged application of Belle Hamilton and. others to the insurance company in Brownwood without the knowledge and consent of the victims.

The testimony of accomplice witness Norman Cowart was that he and appellant intended and did at the time of the taking of Belle Hamilton's check on October 11, 1973, in the amount of $382.78 at her home in Lolita, Jackson County, make false and fraudulent representations to her in order to induce her to deliver the check to them.

He testified:

"A  She was told that she carried her insurance through our agency and that she had a premium coming due and that the First Continental Agency had taken over, or bought out Tidelands Life Insurance Company and it was a combination of Southwest Service Life and Tidelands that we were setting her up on a better policy and that it would be with First Continental Agency. And—

Q  All right. Now at this time, were either you or this defendant, J. D. Williams, licensed to sell insurance?

A  No, sir.

Q  All right. All right. And, let me ask you this. In truth and in fact, was she carrying her insurance through your agency, meaning you and this defendant, J. D. Williams, in truth and in fact?

A  No. No, sir.

Q  And, did she have any premium due like you told her?

A  No, sir.

Q  And had the First Continental Insurance Company bought out Tidelands like it was represented to this woman?

A  No, sir.

Q  Now, then, who made these representations to this woman, you or this defendant, or both of you?

A  Both of us.

Q  Okay. By both of you, do you mean you and this defendant, J. D. Williams?

A  Yes, sir.

Q  Did you two know that these representations that you made to this woman were false when you made them?

A  Yes, sir."

The evidence further showed that the victim, Belle Hamilton, 75 years of age, relied on and believed the false and fraudulent representations of appellant and Cowart and that she signed and delivered her check to them in Jackson County, Texas on October 11, 1973. It was about February 28, 1974, when she realized that she had been a victim of appellant and Norman Cowart.

Article 1413, V.A.P.C., provides:

"The taking must be wrongful so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

To form the basis of the offense of theft by false pretext, the false pretext must be the inducing cause which moves the injured party to surrender the property in question.

If the injured party knows, or by the exercise of ordinary prudence should know, at the time he parts with possession of the property that the pretext is in fact false, the offense cannot arise. *Kinder v. State,* 477 S.W.2d 584 (Tex.Cr.App.)

The evidence further shows that during 1973 Norman Cowart and appellant, J. D. Williams, were soliciting and selling insurance without license or appointments as required by law; therefore, neither was an authorized agent for any insurance company. Appellant had his appointment to sell insurance [1] withdrawn and cancelled in early October 1973.

The complaining witness testified that two men, the appellant and Norman Cowart, came in her house located in Lolita on October 11, 1973, and both of them talked to her about her insurance with Tidelands Insurance Company, which was due; that they represented the First Continental Insurance Company had bought Tidelands Company out and they came to collect the premium; that she did not agree with them to buy a new policy of insurance with any company from them and that she gave them a check in the amount of $382.78 for only the premium they represented to her was then due. She further testified that she did not sign or give the appellant or anyone else permission to sign her name twice to an application for an insurance policy with American Insurance Company and denied that the two signatures thereon were hers. She testified that she wrote a letter to American Insurance Company of Texas on February 28, 1974 (State's Exhibit 13, which was read before the jury), advising them that she had learned on this date "that your company did not buy out the company I had insurance with, Tidelands Life Insurance . . . The men told me they bought out the other company which is not true, I made a check out to Continental Insurance Company for $382.78, check No. 1148, but I got a policy from American Insurance Company of Brownwood, costing $391.80. I did not want this policy. I want my money back, at once if I do not receive

my money back I'll go the State Board of Insurance in Austin. I do not want to do this, but I will if I have to."

Belle Hamilton further testified as follows:

"Q (BY MR. CHEATHAM): Now then, after writing this letter to the American Insurance Company of Texas, Mrs. Hamilton, did you ever get a refund?

A No sir.

Q Was this letter an attempt to get your money back?

A Ya.

Q Now then, Mr[s] Hamilton, let me ask you this. At the time that you gave this defendant and the other man your check for $382.78, at that time if you had known that they were not authorized to sell insurance for any company in Texas, would you have given them your check?

A No sir.

Q If you had known at that—well, let me ask this. If you had known at the time that Tidelands Insurance Company had not sold out to First Continental, would you have given them your check for this amount of money?

\*　　\*　　\*　　\*　　\*　　\*

A No sir.

Q If you had known at that time that your insurance on your Tidelands policy was not due, your premium was not due, would you have given these two men, this defendant and the other man, your check?

A No sir.

Q For $382.78?

A No sir.

Q Did I ask you whether or not you ever gave permission to them to sign your name on this other application to American Insurance?

A No sir; I did not.

Q Did you ever agree in any way to take out a new policy with American Insurance Company of Texas?

A No sir, I didn't.

---

1. V.A.T.S., Insurance Code, Art. 21.14(4).

Q Did you ever agree to take out a new insurance policy with the First Continental Insurance Company of Texas?

A No, I didn't.

Q Did you ever agree to take out a new insurance policy with the First Continental Insurance Company?

A No sir. No sir."

In evidence is a letter from J. E. Dobbs, President of American Insurance of Texas (Brownwood) dated March 20, 1974, addressed to Mr. Pete Allmon, D.S.R. Box 123, Weatherford, Texas, relative to various transactions between them and includes the following:

"On March 5, 1974 you were written a letter in regards to Belle Hamilton. We asked you to satisfy this complaint or refund the commissions you received for writing this case so that we could refund it. This has not been taken care of.

Mr. Allmon, we would recommend that all of the above mentioned complaints be taken care of immediately. Otherwise we will consider every piece of correspondence our Company has been receiving in regards to misrepresentation made by you be turned over to the Insurance Department for its investigation. You are also receiving a copy of a letter in regards to the Peays application. I might advise that an investigation is being made by the District Attorney's Office in San Angelo in regards to this case.

May I hear from you before it is too late to get you involved more deeply than you are already."

An employee of the Ramada Inn, 8700 South Main, Houston, Clarence Webster, made an open court identification of appellant when he, Cowart and Allmon registered there on October 9, 1973. Appellant gave his residence address in Fort Worth, 2532 Ridgemore, Number 19, his black Lincoln Continental license number FGG 492 and his name as J. D. Williams for two persons and a rollaway bed for the third person. Clifford Page, an employee of the Texas Highway Department identified J. D. Williams as the owner of the black Lincoln Continental from its license number as of October 11, 1973. Appellant and Norman Cowart were identified by the manager of the Christopher Inn, Victoria, as registered in Room 219, for two persons, on October 10–11, 1973. Norman Cowart registered and paid the bill by American Express Card. His address was listed at 3820 Grady, Fort Worth.

The Executive Vice President of the Citizens State Bank, Ganado, T. J. Howell, testified that the September-October 1973 bank ledger sheet of Belle Hamilton showed the clearance of her check No. 1148, in the amount of $382.78, dated October 13, 1973 (changed by appellant and Cowart from October 11). The withdrawal of $382.78 from her account depleted and lessened her account in that sum.

Charles Gary Hill of the agency department of the First Continental Life and Accident Insurance Company in Houston testified as to Pete Allmon's and appellant's transactions with his insurance company on October 11, 1973, and also about his investigation at the Security Bank in Fort Worth of the First Continental Agency and later the Pete Allmon Agency accounts. All of his direct testimony fully verifies and corroborates the testimony of accomplice witness Cowart and additional witnesses J. E. Dobbs, then President of the American Life Insurance of Brownwood (November 1973), and Naomi Lawrence, head banker of the Security Bank of Fort Worth and custodian of the bank records.

■ Appellant's contention that the evidence is insufficient to support the conviction for the reason that there was no showing at the time of the taking that appellant possessed criminal intent to deprive the complaining witness Hamilton of the value of the check alleged to have been fraudulently taken is without merit. Accomplice witness Cowart testified at length and in detail showing the intent of appellant and Cowart at the time of the taking that they, both appellant and accomplice witness, possessed criminal intent to deprive the victim, Belle Hamilton, of the value of the check

alleged to have been fraudulently taken on October 11, 1973.

■ Article 38.14, V.A.C.C.P. provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient, otherwise, it is not. *Cherb v. State*, 472 S.W.2d 273, page 279 (Tex.Cr.App.). *Odom v. State*, 438 S.W.2d 912 (Tex.Cr.App.), and other cases cited therein.

■ Applying this test to the instant case, we first eliminated the testimony of Norman Cowart, the accomplice. We are left with testimony of the complaining witness, Belle Hamilton, the testimony of employee of the Ramada Inn showing appellant's presence in Houston, the testimony of employee of the Texas Highway Department identifying the appellant's car by license plates and its presence with him in Houston, the testimony of the manager of the Christopher Inn in Victoria identifying and placing appellant in Victoria, the testimony of the banker in Ganado that the victim's check was cashed, the testimony of the representative of First Continental Life and Accident Insurance Company of Houston about appellant's participation in the attempted transaction with his company and further about his investigation of the two accounts in the Security State Bank of Fort Worth and participation of appellant therewith, the testimony of the President of the American Insurance Company about participation of Pete Allmon and appellant

with his company, and the testimony of the head banker of the Security State Bank of Fort Worth about appellant's connection with the accounts in the name of the First Continental Agency and the Pete Allmon Agency. All of this testimony traces the check No. 1148 of the complaining witness in the amount of $382.78 fraudulently taken from her and proof of appropriations by appellant, with the exception of the testimony of the employee of the Ramada Inn, the employee of the Texas Highway Department and the manager of the Christopher Inn, which shows the plan of appellant along with Pete Allmon and the accomplice witness to illegally solicit and sell insurance. The testimony of the complaining witness not only shows that the offense was committed, but is also evidence which tends to connect the appellant with its commission. All the other testimony connects the appellant with the crime in the instant case, without that of the accomplice.

In *Rogers v. State*, 461 S.W.2d 339, 402, this Court said:

"The corroborating testimony need not be sufficient in itself to establish the guilt of the accused, for if this were true, the testimony of the accomplice would be of no value. The evidence is sufficient if it tends to connect the defendant with the offense."

See *Cherb v. State*, supra.

The evidence is sufficient to corroborate the testimony of the accomplice. This ground of error is overruled.

■ Appellant's contention in ground of error three that the evidence is insufficient to sustain his conviction for the reason the proof shows the offense occurred in Tarrant County and not in Jackson County is misplaced. The offense occurred in Jackson County on October 11, 1973, at the time the complaining witness gave the check because of the intended fraudulent and false representations made by appellant and accomplice witness Cowart.

Art. 13.12, V.A.C.C.P.,[2] in effect at the time of the offense, provided:

"Where property is stolen in one county and removed by the offender to another county,

2. This statute now appears as Art. 13.08, V.A. C.C.P., and provides:

"Where property is stolen in one county and carried off by the offender to another, he may be prosecuted either in the county where he took the property or in any other county through or into which he may have carried it."

The testimony is undisputed that the check was obtained by appellant and Cowart by false pretext and with intent to deprive the victim owner of the value thereof and to appropriate the property to their own use and benefit and the same was so appropriated and completed the offense of theft. Further, the false pretext was the inducing cause which moved the injured party to surrender the check. Venue was proper in Jackson County. See and compare *Davenport v. State*, 127 Tex.Cr. 552, 78 S.W.2d 605. Ground of error three is overruled.

The appellant contends that the trial court committed error in violation of *Gaskin v. State*, 172 Tex.Cr. 7, 353 S.W.2d 467, by denying the appellant access to the use of a tape recorded statement of the accomplice witness Cowart after he had completed his direct examination upon the trial of this cause.

The record reflects that Cowart entered a plea of guilty on or about November 1, 1974, to two indictments charging felony theft involving fraudulent insurance sales in DeWitt County. Seven to ten days later, Cowart agreed to testify in any other cases where other persons had also committed crimes in the insurance business of which he had knowledge. Cowart then spent approximately 18 hours, over a period of a week, answering questions about his knowledge of other transactions. A recording of the questions and answers was made by the district attorney. It was these statements on tape that were sought by appellant after the witness Cowart completed his direct testimony in the trial of the instant case. When this request was made, the district attorney assured the court that he was present during the recording and that the tape recordings did not have anything to do with the instant case on trial. He assured the court that the transaction involved in this case came to his attention some months after the tape recordings were made.

Curtis Woodard, a United States Postal Inspector, was present during the making of the tape recordings in question, and his testimony on this issue was that the tapes made no reference to the "Belle Hamilton" complaint or the instant transaction. Following this testimony, the witness Cowart also stated that he did not tell the district attorney about the "Belle Hamilton case" until after the first of the year (1975) and the tapes were made in 1974. Mr. Woodard also testified that the investigation against appellant in this cause was triggered by a telephone conversation on January 28, 1975, between the witness and Mr. Bill Davis, Chairman of the Board of Insurance of Texas. The trial court then concluded that these tape recordings contained nothing pertaining to the instant transaction and denied appellant access to them.

■ Appellant contends that the tapes in question come within the provisions of the *Gaskin* Rule. *Gaskin v. State*, supra, and subsequent decisions merely make available to appellant prior statements of witnesses pertaining to the matters about which they testified, for the purpose of cross examination and possible impeachment, where demand is made after the witness has testified on direct examination. Of necessity, in order to be used for cross examination or impeachment, it would be necessary that the statement pertain to the matter about which the witness is testifying. Obviously, the appellant would not be allowed to cross examine from the statement or impeach by using the statement as to immaterial matters or immaterial issues where no pertinence is shown to the testimony of the witness in the instant case.

■ In this cause the tapes in question have now been made available to appellant

the offender may be prosecuted either in the county where he took the property or in any other county through or into which he may have removed the same."

by order of this Court. *Ogle v. State*, Tex.Cr.App. (No. 50,159, delivered November 5, 1975, Opinion on Rehearing). He has now filed a supplemental brief suggesting to the Court that he would have found the information in the tapes useful in the conduct of his defense. However, appellant has failed to point to any statement in the tapes that pertains to the instant transaction. He has failed to point out to the Court that at any point this witness made statements on the tapes pertaining to the transaction about which he testified in the course of this trial. He has not suggested to the Court how any of the statements made by the witness in these tapes could have been legitimately used in the cross examination of this witness in the trial of this case. The fact that a witness has made statements concerning other transactions does not make those statements automatically available to trial counsel under the *Gaskin* Rule. Our examination of this record leads us to the conclusion that the trial judge did not commit error in denying appellant access to these tape recordings at the conclusion of the direct testimony of the witness Cowart. This ground of error is overruled.

The judgment is affirmed.