Mitch NORMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–90–00101–CR.

Court of Appeals of Texas, Tyler.

April 28, 1993.

Discretionary Review Refused Sept. 22, 1993.

Paul Tatum, Nacogdoches, for appellant.

Howard Whitworth, Asst. Dist. Atty., Nacogdoches, for appellee.

## OPINION ON REHEARING

RAMEY, Chief Judge.

In a published opinion dated November 30, 1992, this Court affirmed the trial court's judgment against Appellant. Thereafter, on December 15, 1992, Appellant filed a motion for rehearing. We overrule the motion for rehearing, but withdraw our opinion of November 30, 1992, and substitute the following:

A jury convicted Appellant of the offense of aggravated sexual assault of a child and assessed him life imprisonment. Appellant raises five points of error on appeal. We will **affirm** the conviction.

On April 21, 1989, Appellant leased a trailer in Nacogdoches, Texas for himself, his girlfriend Gwen Robinson, and her three daughters. Appellant and his family lived there until approximately July 3, 1989, when the trailer was damaged by fire. Robinson's three daughters then went to live with their paternal grandmother, Truda LeBlanc.

Shortly after the Robinson girls moved in with Ms. LeBlanc, LeBlanc took the complainant, seven-year-old M_R_, and her sister S_R_, to be interviewed at the Department of Human Services, Child Protective Services Division in Cameron, Texas. Sally Melant, a supervisor with that division testified that Ms. LeBlanc, brought M_R_ to Melant's office for an interview. Melant, without giving M_R_'s description of the sexual assault, testified that M_R_ told her that there had been a completed act of sexual intercourse.

At trial, M_R_ testified that on one occasion when her mother had gone to the store, Appellant undressed her and put his "thing" inside of her. She stated that it felt "horrible". Afterwards, Appellant told her not to tell anyone what he had done.

Dr. James Horton, the physician who examined M_R_ following her interview with Melant, testified that M_R_ "stated that Mitch, her mother's boyfriend, put his 'ding dong' into her, and she pointed at her vaginal area." According to Dr. Horton, an examination of M_R_'s vaginal area revealed that on more than one occasion she had undergone sexual intercourse or chronic manipulation on more than one occasion.

After the State rested, Appellant testified and denied allegations of sexual activity with M_R_. In his defense, Appellant also called numerous witnesses who testified that they had observed nothing unusual about M_R_'s demeanor toward Appellant.

By his first point of error, Appellant avers that the trial court erred in allowing the outcry testimony of Sally Melant, a supervisor with the Department of Human Services, Child Protective Services Division. Melant testified that she interviewed M_R_ on July 13, 1989. Over Appellant's running objection that the testimony was hearsay, TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp. 1992), and TEX.R.CRIM.EVID. 801, Melant testified as follows concerning the interview:

Q. [By State's attorney] And who was present when you interviewed M_R_?

A. I was present, her sister, S_R_, was present and her grandmother, her paternal grandmother, Truda LeBlanc was present.

Q. Can you tell the jury whether or not M_R_ made an outcry to you concerning having been raped?

A. Yes, she did.

Q. And can you tell this jury whether or not she described to you to having undergone a completed act of sexual intercourse?

A. Yes, she did.

(emphasis added)

■ Appellant argues that this testimony was inadmissible because the State failed to comply with the notice requirements for "outcry" statements set forth in Article 38.072. We agree. Article 38.072 applies to statements that **describe** the alleged offense:

Art. 38.072 *Hearsay* Statement of Child Abuse Victim

Sec. 2. (a) This article applies *only* to statements that *describe* the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

(b) A statement that meets the requirements of subsection (a) of this article is *not inadmissible because of the hearsay rule* . . .

TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2 (emphasis added).

We find the terms "raped" and "completed act of sexual intercourse" sufficiently descriptive to bring Melant's testimony within the gamut of art. 38.072.

 Having found that the trial court erred in failing to sustain Appellant's objection under art. 38.072, an examination of such error under the standards prescribed by the Court of Criminal Appeals in *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Cr.App.1989) and *Higginbotham v. State,* 807 S.W.2d 732 (Tex. Cr.App.1991) is necessary. *Dorado v. State,* 843 S.W.2d 37 (Tex.Cr.App., 1992); *Lankston v. State,* 841 S.W.2d 943 (Tex.App.—Waco 1992, pet. ref'd). In *Higginbotham,* the court reiterated that the following factors be considered: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State and its probable collateral implications; (4) the weight a juror would probably place on the error, and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.,* 807 S.W.2d at 735. After analyzing these factors, we must then determine whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Cr. App.1989). In considering these factors, this

Court should be concerned with the integrity of the process leading up to the conviction, not the propriety of the outcome of the case. *Higginbotham,* 807 S.W.2d at 806–07; *Harris,* 790 S.W.2d at 587–88.

 The source of the alleged error in the instant suit arose from the State's alleged noncompliance with the notice requirements for outcry testimony under art. 38.072. Pursuant to these notice requirements the testimony in question would have been admissible had the State, 14 days before the trial began: (1) notified Appellant of its intention to use Melant's testimony regarding M_R_'s outcry, (2) provided Appellant with a written summary of the statement, and (3) obtained a ruling on the reliability of the statement outside the presence of the jury.[1] In analyzing the nature of the error, this Court must examine whether the State intended to taint the trial in offering inadmissible evidence. *Higginbotham,* 807 S.W.2d at p. 735. Based on the State's response to Appellant's objection, we conclude that the State believed in good faith that Melant's brief testimony confirming M_R_'s outcry was admissible under long-established common law authority, and that art. 38.072 was not applicable. Thus, we conclude that the State did not intend to taint the trial.

Second, the erroneous testimony was not emphasized by the State. Melant's testimony was brief and unembellished, and the statement of facts before us does not contain the parties' closing arguments. Thus, on the record before us, we cannot say that the State unduly emphasized the erroneous testimony.

 The next factors require an examination of the probable collateral implications of the error and the weight the jury placed on the disputed testimony. According to *Higginbotham,* an analysis of collateral implications contemplates such things as the disparaging of a sole defense, and the error's impact on sentencing. *Id.,* at 737. Here, we find that the error had minimal collateral implications. Melant's testimony was not the

---

**1.** The final requirement is that the child testify or be available to testify, and this requirement was met.

only evidence of M_R_'s sexual assault by the Appellant. At trial, M_R_ described Appellant's sexual assault upon her, and further stated that she had told Sally Melant of the assault. Dr. James Horton, M_R_'s examining physician, testified about the evidence he found that tended to show that M_R_ had experienced repeated acts of sexual assault. He also testified without objection that M_R_ had told him Appellant "put his 'ding dong' into her." In light of the cumulative evidence from these witnesses, we conclude that error complained of had minimal impact on Appellant's case.

Finally, we must determine whether a finding that this error was harmless would encourage the State to repeat it with impunity. While there is some risk that the State might repeat this type of error, our holding here will provide little temptation for the State to circumvent the requirements of art. 38.072. Allowing a witness to merely confirm that an outcry occurred is of limited value to the State as compared with its right after compliance with art. 38.072 to elicit from the outcry witness detailed information concerning the child's description of the offense.

■ After analyzing the alleged error in light of the guidelines set forth in *Higginbotham* and *Harris,* we find beyond a reasonable doubt that a rational trier of fact would not have reached a different result if the alleged error and its effects had not recurred.

■ Appellant also argues that the trial court erred in admitting Melant's testimony because M_R_ first reported the offense to her grandmother, Truda LeBlanc, not Melant. In a hearing outside the presence of the jury, LeBlanc testified as follows on cross examination:

Q. [By Appellant's attorney] Mrs. LeBlanc, so I understand what occurred, is it my understanding that a complaint had been made by the child to you concerning an alleged sexual activity by Mitch Norman, is that correct?

A. Yes.

Q. And that complaint occurred to you before you went to anyone else, is that correct?

A. Yes.

Q. And so the other persons enumerated at the Department of Human Resources were persons who were at a later date to the complaint made to you?

A. At a later date?

Q. In other words, you know about it first—

A. Oh, yes. Right.

Q. And they weren't present.

A. Right.

Q. And only at a later date did you go to the Human Resources, whether it was that day or—

A. Yes.

Q. —but at a later time.

A. Okay. Yes.

Q. All right. And you—I believe in response to the District Attorney stated that they got no response, is that correct?

A. That those two that the girls went in first with, they didn't get anything—

Q. Okay.

A. —because—Well, I don't know why. But then Sally and I went in by ourself with them and they opened up.

Q. Now, were all—a number or children present when all of this occurred?

A. Yes.

Following this testimony, the State's attorney questioned Ms. LeBlanc as follows for purposes of clarification:

Q. [By State's attorney] Mrs. LeBlanc, is it not true that the—reason you took them down there, the complaint had nothing to do with a completed act of intercourse, but rather certain bites in certain areas—

A. Yes.

Q. —on the children?

A. That is true.

Q. And until M_R_, in front of you and Sally Melant, testified or made statements concerning a completed act of intercourse you had not heard an outcry

relating to a completed act of intercourse?

A. That's true.

Appellant's argument that Melant was not the first to receive M_R_'s outcry statement is not supported by the record and is without merit.

■ Appellant also contends that the trial court erred in admitting Melant's testimony because it constituted improper bolstering of M_R_'s testimony and was highly prejudicial. In order to preserve a complaint for appellate review, the general rule is that a party must not only have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds were not apparent from the content, but also have received a ruling thereon by the trial court. TEX. R.APP.P. 52(a); TEX.R.CRIM.EVID. 103(a). Since Appellant did not object to Melant's testimony on grounds of bolstering or prejudice, the point was not preserved for review. For the above-stated reasons, we overrule Appellant's first point of error.

By his second point of error, Appellant argues that the trial court erred in allowing the outcry testimony of Truda LeBlanc. A review of the record shows that no testimony pertaining to M_R_'s outcry was admitted into evidence through Ms. LeBlanc. On the contrary, the trial court specifically limited LeBlanc's testimony to the matter of having taken M_R_ and her sisters for an interview at the Department of Human Services, Child Protective Services Division. Appellant's second point of error is overruled.

■ Appellant's third point of error alleges that the trial court erred in allowing M_R_ to testify to a conversation she had with Sally Melant. The testimony complained of follows:

Q. [By State's attorney] But did you [M_R_] tell someone, is that right?

A. [By M_R_] Yes.

Q. Did you tell Sally?

A. Yes.

APPELLANT'S ATTORNEY: Object to hearsay, Your Honor. Also, there's no identification as to time, place or location.

STATE'S ATTORNEY: Your Honor,—

THE COURT: Sustained as to time, place and location, overruled otherwise.

APPELLANT'S ATTORNEY: Also, I would bring to the Court's attention that the State has failed to comply with Article—on the notice to res gestae statements.

THE COURT: Overruled.

APPELLANT'S ATTORNEY: May I have a running objection?

THE COURT: Yes.

STATE'S ATTORNEY: What was the nature of the Court's ruling again, Your Honor, on the—as far as having told Sally?

THE COURT: The Court overruled the objection, except the objection contained a clause as to when and where, that is, the time frame in which it occurred in reference to the alleged offense, and the Court sustained that objection.

APPELLANT'S ATTORNEY: Judge, so the record—the objection is clear, 38.072, which I have referenced, and specifically to the requirement that the State prove first the person and the reliability portion of that statute.

THE COURT: Yes.

STATE'S ATTORNEY: Your Honor, if I could be heard on the 38.072 is a statutory exception to the hearsay rule which provides for the admissibility of the hearsay statement of a child, but as common law and under the Rules of evidence in this State outcry testimony in a case of sexual assault is always admissible—

THE COURT: The Court's familiar with that Rule. The objection is though that there has been no indication of when and where the event occurred.

APPELLANT'S ATTORNEY: The outcry itself?

THE COURT: Yes.

Q. Where were you when you told Sally?

A. I don't remember what that place is called.

Q. Is it in the same time [sic] where your grandmother lives or close—

A. No. It was this big building with cars all over it.

Q. Okay. But did you tell Sally?

A. Yes.

Q. Okay. And then did Sally take you to a doctor?

A. Yes.

On appeal, Appellant's bases for complaint concerning the admission of this testimony were that the requirements of art. 38.072 had not been met, and that Sally Melant was not the "initial person receiving the outcry but [was] a subsequent person at a later date who received an outcry if any in this case did occur." Article 38.072 deals with the introduction of *hearsay statements* of the child abuse victim, and, therefore, is not applicable to M_R_'s testimony at trial. Furthermore, as stated under the first point of error above, the record demonstrated that Sally Melant was the first person to receive M_R_'s outcry testimony concerning intercourse with Appellant. We overrule Appellant's third point of error.

Appellant's fourth point alleges that the trial court erred in overruling Appellant's motion for mistrial when the State introduced extraneous offenses of other individuals having sexual intercourse with M_R_. The testimony complained of and Appellant's objection thereto follow:

Q. [By Prosecutor] Okay. Now this thing that Mitch did to you there in the trailer, did anybody besides Mitch ever do that to you?

A. [By M_R_] His brothers—

APPELLANT'S ATTORNEY: Objection, Your Honor, extraneous offense and—

THE COURT: Sustained.

APPELLANT'S ATTORNEY: —We'll ask the jury to be instructed to disregard.

THE COURT: Sustained unless it's shown the same is admissible.

STATE'S ATTORNEY: Your Honor, the question was, "Has anybody other than the Defendant ever did this?" This is not bringing in an extraneous offense by the Defendant. This is merely eliciting from the child the fact that a person other than Mitch had also done the same thing. It is not any extraneous act on the part of—

THE COURT: The objection is sustained.

APPELLANT'S ATTORNEY: Judge, we'll again ask the jury be instructed to disregard wholly the question and answer, if any.

THE COURT: The jury is instructed to wholly disregard the question and any answer given thereto, draw no inference therefrom and proceed as though the same had not been inquired of unless the same becomes material in the case and is readmitted for your consideration.

APPELLANT'S ATTORNEY: Judge, I do have a motion to present to the Court.

THE COURT: And you may be heard during the recess.

Shortly thereafter, Appellant moved for a mistrial based on the foregoing testimony, and the trial court overruled it.

An extraneous offense is any act of misconduct which is not shown in the charging instrument and which is alleged to have been *committed by the accused. Gomez v. State,* 626 S.W.2d 113, 114 (Tex. App.—Corpus Christi 1981, pet. ref'd). The testimony objected to by Appellant was not evidence of an extraneous offense of the accused. While the relevance of this line of inquiry seems to be in question, no such objection was made and that issue has not been preserved for appeal. Furthermore, despite Appellant's improper objection, the trial court sustained his objection and instructed the jury to disregard the statement complained of. Generally, any error in asking an improper question or in admitting improper testimony is rendered harmless by an instruction to disregard. *Huffman v. State,* 746 S.W.2d 212, 218 (Tex.Cr.App.1988). Appellant's fourth point of error is overruled.

By his fifth and final point of error, Appellant argues that the trial court erred in refusing to grant his objection to the Court's

charge at the guilt-innocence phase of trial. Specifically, Appellant complains that the trial court erred in failing to include in the charge, an instruction to the jury on the inherently questionable nature of a minor's testimony as evidence of sexual acts between the minor complainant and the Appellant. Appellant argues that under *Boutwell v. State,* 719 S.W.2d 164, 178 (Tex.Cr.App.1985), the Court of Criminal Appeals characterized the evidence of a minor complainant in "sexual cases" as "inherently questionable." In *Boutwell,* the court engaged in a lengthy analysis of various theories underlying the admission of extraneous acts between a complainant and a defendant. In that analysis, the court stated:

> [W]e also recognize the validity of the "res gestae" or context exception established in *Battles [v. State,* 63 Tex.Cr.R. 147, 140 S.W. 783 (1911) ], supra, and *Johns [v. State,* 155 Tex.Cr.R. 503, 236 S.W.2d 820 (1951) ], supra. Particularly in cases involving minors, such evidence can aid the jury in properly evaluating the "inherently questionable testimony of a minor against an adult responsible for his welfare" or in a position of authority and control over the minor. (emphasis added)

*Id.,* 719 S.W.2d at 178–79 citing *Veloz v. State,* 666 S.W.2d 581 (Tex.App.—Houston [1st Dist.] 1984, no pet.). Appellant argues that because of the above-quoted statement from *Boutwell,* the jury should have been instructed as to the inherently questionable nature of M_R_'s testimony.

We disagree. Neither *Boutwell* nor *Veloz* suggests the inclusion of such an instruction in the charge. A child is competent to testify unless "after being examined by the court [he or she] appear[s] not to possess sufficient intellect to relate transactions with respect to which they are interrogated." TEX.R.CRIM.EVID. 601(a)(2). Thus, the question of competency of child witnesses is for the trial court to resolve. *Clark v. State,* 558 S.W.2d 887, 890 (Tex.Cr.App.1977); *Reyna v. State,* 797 S.W.2d 189, 191 (Tex.App.—Corpus Christi 1990, no pet.). Once competent evidence is presented, it is the responsibility of the trier of fact to determine the credibility of the witnesses and the

weight to be given their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Cr.App.1986) (on motion for rehearing), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159; TEX.CODE CRIM.PROC.ANN. art 38.04 (Vernon 1979). Appellant's fifth and final point of error is overruled.

The judgment of the trial court is **affirmed.**