COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-377-CR

 

 

MARVIN OWENS DANCER                                                    APPELLANT

A/K/A
MARVIN DANCER

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Marvin Owens Dancer
a/k/a Marvin Dancer appeals his two convictions for aggravated robbery with a
deadly weapon.  We affirm.








In the early morning hours of
November 13, 2005, Javier Sanchez and five friends (altogether, three men and
three women) were socializing in Sanchez=s Fort Worth apartment when there was a knock at the door and two or three
intruders forced their way inside.  One
of the intruders, who had a loaded gun, demanded money and hit Sanchez and one
of his male friends with the gun. 
Sanchez=s group
eventually disarmed their assailant, and the other intruder(s) fled.  When Officer John Lucas responded to Sanchez=s apartment, he found appellant lying injured on the floor.

Following a three-day trial,
a jury convicted appellant of two counts of aggravated robbery with a deadly
weapon.  The trial court sentenced
appellant to two forty-year sentences, to be served concurrently.

In his first point, appellant
contends that the trial court improperly refused to strike the testimony of two
witnesses and grant a mistrial because the State failed to produce the
witnesses= written
statements after their direct examinations.

Texas Rule of Evidence 615
requires a trial court to order the production, after a witness has testified
on direct examination, of the witness=s written statement relating to the matter testified and provides
sanctions if the party so ordered fails to comply:








(a)  Motion for Production.  After a witness other than the defendant has
testified on direct examination, the court, on motion of a party who did not
call the witness, shall order the attorney for the state or the defendant and
defendant=s
attorney, as the case may be, to produce, for the examination and use of the
moving party, any statement of the witness that is in their possession and that
relates to the subject matter concerning which the witness has testified.

 

. . . . 

 

(e) Sanction for Failure to
Produce Statement. If the other party elects not
to comply with an order to deliver a statement to the moving party, the court
shall order that the testimony of the witness be stricken from the record and
that the trial proceed, or, if it is the attorney for the state who elects not
to comply, shall declare a mistrial if required by the interest of justice.[2]

The purpose of this rule is to assist the
defendant to cross-examine and possibly impeach a witness.[3]








All six witnesses who were in
Sanchez=s apartment gave Officer Lucas written statements shortly after the
offense occurred.  After Sanchez
testified on direct examination, appellant requested Sanchez=s written statement under Rule 615. 
The prosecutor responded that he had never received the witness=s written statement and that four of the six statements were missing
and believed to have been lost by the police. 
Appellant moved for production of the statements under Rule 615(a) and
for sanctions under Rule 615(e).[4]  The trial court denied both motions.  Later, following the direct examination of
Daniel CeronCanother
eyewitnessCappellant
made similar requests, and the trial court again denied relief.[5]

Near the end of the trial,
appellant called Detective Darren Darracq. 
Detective Darracq responded to the scene approximately two and a half
hours after the offenses and received the six written statements from Officer
Lucas.  Detective Darracq acknowledged to
the jury that he had lost four of the statements and, although he had looked
for them, had no idea where they were.[6]








By its plain language, Rule
615(a) only requires a party to produce witness statements that are in Atheir possession.@[7]  The State argues that it did
not Apossess@ the
statements and, therefore, did not Aelect@ not to
produce them.  We agree.

In Jenkins v. State,
the Texas Court of Criminal Appeals held that Rule 615 only requires a
prosecutor to produce witness statements that are Ain the prosecutor=s possession@ or in the
possession of the Aprosecutorial
arm of the government.@[8]  When interpreting Rule 615 in
the past, we have stated that a party possesses a statement Aif it is within [the party=s] control or readily accessible,@[9] or in the party=s Aactual or constructive possession.@[10]








The evidence shows that at
the time of trial the statements were not in the possession of the State.  The prosecutor affirmatively represented to
the trial court that he was never given Sanchez=s or Ceron=s written
statement.  Detective Darracq=s testimony that he lost the statements and could not find them
corroborated the prosecutor=s representations.  The
undisputed evidence showed that neither he nor the prosecutor physically
possessed the statements at the time they were requested, nor were the
statements within their control or readily accessible.[11]  We, therefore, hold that Sanchez=s and Ceron=s written
statements were not in the State=s possession for purposes of Rule 615.[12]








Section (e) of the rule
requires sanctions A[i]f the
other party elects not to comply with an order to deliver a statement to the
moving party.@[13]  The trial court, however,
found that the State did not possess the statements and thus the court never
ordered the State to deliver them to appellant. 
Because the trial court never ordered the State to deliver the
statements, the State did not elect not to comply with an order to deliver the
statements to appellant.[14]

For these reasons, we hold
that the trial court properly denied appellant=s Rule 615 motions for production and for sanctions.  We overrule appellant=s first point.[15]

In his second point,
appellant argues that the trial court improperly allowed the State to bind a
juror in voir dire.  The allegedly
objectionable question dealt with whether the State would be required to
produce in evidence a weapon in order to establish aggravated robbery:

[The State]:        . . . if
there=s
been testimony that there=s a
weapon and                           you believe that testimony beyond a
reasonable doubt,                               does
that mean, in fact, that the State would have to                              produce the weapon?

 

[Appellant]: I=m
going to again object to the attempt to bind this                           particular
juror.

 

. . . . 

 

[The State]:        . . . Is
there anyone here that would require the State                         to have the weapon?  Anyone on this panel?








[Appellant]: Judge, again, I=m
going to object to asking that                         question.  Still an attempt to bind now the entire
panel.

 

THE COURT:       And I=ll sustain it as phrased of
would they require.  That would all
depend on the facts and the circumstances of an individual case.

 

[Appellant]:         Your Honor, we=d ask
for an instruction to disregard.

 

THE COURT:       Well, no one answered the question, so I=ve
ruled on the question as phrased.  No one
can ask youCdisregard
the way he phrased it, just as a precaution. 
No one can ask you what you will do until you hear the evidence.  It=s what you can keep an open
mind to do in an appropriate case based upon what the facts show.  Does everyone understand that distinction?

 

SEVERAL PANEL MEMBERS:  Yes.

 

THE COURT:       Because if the
lawyers can sit here and say these are                          the facts, will you do this, if those
are the facts, would                               you
do that, well, the lawyers would be here for three                         days asking those questions, as they should,
if you                              could
give them answers and then try the case here in                             voir dire instead of try
the case through testimony.  On                               the other hand, there are rules that both sides are                              entitled to rely
on you to follow which is to evaluate the                              testimony,
render a true verdict based on the evidence                          and
decide if there=s
proof or notCproof
of any or all                         elements of the offense.  And if proved beyond a                               reasonable
doubt, the State=s
entitled to a guilty verdict.                              If not proven beyond
a reasonable doubt as to any or                           all
elements, the Defense is entitled to a not guilty.                            Does everyone understand that basic
premise?

 

SEVERAL PANEL MEMBERS:  Yes, sir.

 

[Appellant]: To perfect the
record, we move for mistrial.








 

THE COURT:       That will be denied. 

When the trial court sustains
an objection and instructs the jury to disregard[16]
but denies a defendant=s motion for
a mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.[17]  In determining whether the trial court abused
its discretion in denying the mistrial, we balance three factors:  (1) the severity of the misconduct
(prejudicial effect), (2) curative measures, and (3) the certainty of
conviction absent the misconduct.[18]  Only in extreme circumstances, when the
prejudice is incurable or the comment is Aso prejudicial that expenditure of further time and expense would be
wasteful and futile,@ will a
mistrial be required.[19]  Generally, a prompt instruction to disregard
will cure error associated with an improper question or comment, including a
question posed at voir dire.[20]








To begin with, we note that
none of the jurors responded to the allegedly improper commitment
question.  Further, nothing in the record
suggests that this is an Aextreme
circumstance@ where the
prejudice, if any, was incurable, and appellant does not argue that this is
such a case.  Accordingly, we hold that
the instruction to disregard cured the error, if any, and the trial court did
not abuse its discretion in denying appellant=s motion for mistrial.[21]  We overrule appellant=s second point.

In his third point, appellant
argues that the trial court improperly failed to grant a mistrial to cure the
State=s improper jury argument which constituted an attack upon appellant
over the shoulders of his counsel.

During the State=s rebuttal closing argument at the guilt-innocence phase, the
prosecutor denied that identity of the assailant was an issue, arguing, AHe [the defense attorney] knows who it was.  He knows who was carried out on that
stretcher.  It was the Defendant.@  The trial court sustained
appellant=s objection
and instructed the jury to disregard the argument but denied appellant=s motion for mistrial.








Applying the law discussed
above, we conclude that the trial court did not abuse its discretion in
refusing to grant a mistrial.  The
prosecutor=s
objectionable argument was not so extreme or manifestly improper that an
instruction to disregard could not cure any possible prejudicial effect.[22]  Further, the trial court instructed the jury
to disregard the argument and explained that Awhat the lawyers say about each other or about the evidence is not
evidence.@  The jurors indicated that they understood the
trial court=s
instruction by nodding and answering A[y]es, sir.@  The prosecutor then restated the argument
without objection.  Finally, the evidence
of guilt was strong.  The three
testifying witnesses= accounts of
the aggravated robberies were consistent, and they identified the man who had
assaulted them with a gun as the man who was lying on the floor of the apartment
when Officer Lucas arrived.[23]

For these reasons, we
conclude that the trial court did not abuse its discretion in refusing to grant
a mistrial, and we overrule appellant=s third point.








Having overruled all of
appellant=s points, we
affirm the trial court=s judgment.

 

PER CURIAM

PANEL A: 
CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

DELIVERED: 
April 3, 2008











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Evid. 615.





[3]See
Enos v. State, 909 S.W.2d 293, 295 (Tex. App.CFort
Worth 1995) (referring to Gaskin rule), pet. dism=d,
improvidently granted, 959 S.W.2d 620 (Tex. Crim. App. 1997).  Texas Rule of Criminal Evidence Rule 614(a)
expanded and codified the Gaskin rule and was recodified in 1998 as
Texas Rule of Evidence 615.  See, e.g.,
Tex. R. Evid. 615 cmt.; Enos
v. State, 889 S.W.2d 303, 304 n.2 (Tex. Crim. App. 1994).





[4]At
trial, the grounds for appellant=s objections and motions were
Rule 615, confrontation, and cross-examination. 
On appeal, however, he limits his argument to Rule 615.





[5]Sanchez
and Ceron also gave lengthy audio-taped statements on the night of the
aggravated robberies, albeit several hours after making the written
statements.  Appellant was provided with
these statements.





[6]In
the trial court and on appeal, appellant has disclaimed any suggestion of
prosecutorial misconduct and has not challenged the detective=s
testimony that he lost the statements accidentally and never gave them to the
prosecution.





[7]Tex. R. Evid. 615(a).





[8]912
S.W.2d 793, 819 (Tex. Crim. App. 1995) (op. on reh=g); see
also Olivas v. State, No. 08-99-00442-CR, 2000 WL 1867971, at *5
(Tex. App.CEl
Paso Dec. 21, 2000, no pet.) (not designated for publication) (concluding based
on Jenkins that Apossession@
refers only to statements in the prosecutor=s possession).





[9]Brooks
v. State, 901 S.W.2d 742, 746 (Tex. App.CFort
Worth 1995, pet. ref=d
& pet. dism=d).





[10]Williams
v. State, 940 S.W.2d 802, 805 (Tex. App.CFort
Worth 1997, pet. ref=d); Jordan
v. State, 897 S.W.2d 909, 918 (Tex. App.CFort Worth 1995, no pet.).





[11]Additionally,
the trial court found that the recorded statements were made contemporaneously
with the written statements and speculated that they were probably more
detailed than the written statements.  No
one disputed the trial court=s recitation of the facts.





[12]See Amunson
v. State, 928 S.W.2d 601, 608 (Tex. App.CSan Antonio 1996, pet. ref=d)
(holding that rule was not violated where officer stated he made a report but
was Aunable
to find it@
because there was no report to tender to counsel); see also Olivas, 2000
WL 1867971, at *5 (holding officers= handwritten statements and
evidence forms that were kept at drug task force office and had never been
provided to the prosecutor were not in the prosecutor=s
possession); Baker v. State, No. 05‑97‑00986‑CR, 1999
WL 418314, at *6 (Tex. App.CDallas June 24, 1999, pet.
ref=d)
(not designated for publication) (holding that State was not required to
produce statements that were not in its possession at the time of request
because they had been destroyed pursuant to document retention policies).





[13]Tex. R. Evid. 615(e).





[14]See
Marquez v. State, 757 S.W.2d 101, 103 (Tex. App.CSan
Antonio 1988, pet. ref=d).





[15]Although
appellant understandably wanted the missing statements to assist him in
cross-examining and possibly impeaching Sanchez and Ceron, there is no
indication that the statements were exculpatory, and appellant did not advance
a Brady objection in the trial court. 
We express no opinion as to the outcome of a Brady analysis under
these facts.





[16]Appellant
claims that an instruction to disregard was requested but not given.  Based on the exchange quoted above, however,
we conclude that the trial court did instruct the jury to disregard the
prosecutor=s
question.





[17]Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).





[18]Id.; Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).





[19]Hawkins, 135
S.W.3d at 77; see also Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim.
App. 2003), cert. denied, 542 U.S. 905 (2004).





[20]Ovalle
v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); Hamilton
v. State, No. 02-04-00435-CR, 2005 WL 3008449, at *2 (Tex. App.CFort
Worth Nov. 10, 2005, pet. ref=d) (mem. op., not designated
for publication); Calderon v. State, 847 S.W.2d 377, 380 (Tex. App.CEl
Paso 1993, pet. ref=d).





[21]See
Calderon, 847 S.W.2d at 380B81
(holding that instruction to disregard cured error from prosecutor=s
improper comment during voir dire).





[22]See
Orona v. State, 791 S.W.2d 125, 127B30
(Tex. Crim. App. 1990) (concluding beyond a reasonable doubt that error in
prosecutor=s
accusation that defendant=s
attorneys Aknow
how to argue to get people off@ was harmless in that
statement was not so prejudicial, under facts of the case, as to call for
reversal).





[23]Although
the witnesses did not identify appellant in the courtroom as their assailant,
Officer Lucas identified appellant as the man he found on the floor of the
apartment.