Christopher G. JORDAN, Appellant,

vs.

The STATE of Texas, State.

No. 2–93–445–CR.

Court of Appeals of Texas, Fort Worth.

April 6, 1995.

---

**4.** *City of Houston v. Clear Creek Basin Auth.,* 589   S.W.2d 671, 677 (Tex.1979).

John W. Sweeney, Jr., Chandler L. Grisham, Douglas, Kressler & Wuester, P.C., Fort Worth, for appellant.

Bruce Isaacks, Criminal Dist. Atty., Pamela A. Wells, Charles Breaux, Patrick Berry, Asst. Dist. Attys., Denton, for appellee.

Before LATTIMORE, DAY and PAUL S. COLLEY (Retired), JJ.

## OPINION

LATTIMORE, Justice.

Appellant Christopher Jordan was convicted by a jury of the offense of driving while intoxicated.[1] The jury assessed punishment at ninety days' confinement in the Denton County Jail, probated for two years, and a $450 fine. In three points of error, Jordan complains that the State improperly commented on his failure to testify, and the trial court erred in failing to require the State to produce a tape recorded interview.

We affirm.

On the evening of June 12, 1992, Bill Theodore of the Denton Police Department stopped Christopher Jordan for attempting a left-hand turn through a red light. After smelling alcohol on Jordan's breath, Officer Theodore administered three separate field sobriety tests. Suspecting that Jordan was intoxicated, Officer Theodore requested that he further undergo a breath or blood-alcohol test. Jordan refused and was arrested and taken to the Denton County Jail, where Officer Theodore videotaped Jordan performing additional field sobriety tests. Later, a local magistrate found no probable cause existed to justify issuance of an arrest warrant and ordered Jordan released. Jordan was subsequently convicted of driving while intoxicated.

In his first and second points of error, Jordan contends the State twice im-

---

1. Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex.Gen.Laws 1568, 1574, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3697 (current version at Tex.Penal Code Ann. § 49.04 (Vernon 1994)).

properly commented on his failure to testify. First, Jordan claims the trial court erroneously denied his motion for mistrial urged in response to the prosecutor's closing argument, on Jordan's failure to submit a breath or blood sample, which was an impermissible comment upon his failure to testify. Next, Jordan contends the trial court erroneously overruled his objection to the prosecutor's continued impermissible comments.

■ A comment upon a defendant's failure to testify violates the Fifth Amendment to the United States Constitution; *Fontaine v. California*, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968); TEX. CONST. art. I, § 10; *Moore v. State*, 849 S.W.2d 350, 351 (Tex. Crim.App.1993) (Baird, J., concurring); and TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979).[2] *Montoya v. State*, 744 S.W.2d 15, 34 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988).

■ Argument will constitute a comment upon the defendant's failure to testify if the language used is manifestly intended or is of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Moore*, 849 S.W.2d at 351; *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). To be improper, the comment must be such that it could only be construed to refer to a defendant's failure to testify; it is not sufficient that the language might be construed as implied or indirect allusion to an accused's failure to testify. *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex. Crim.App.1984); *Bird v. State*, 527 S.W.2d 891, 893 (Tex.Crim.App.1975). The facts and circumstances of each case must be analyzed to determine whether the language is of such a character as to direct the jury to the defendant's failure to testify. *Montoya*, 744 S.W.2d at 35. To constitute reversible error, the jury argument must be extreme or manifestly improper or inject new and harmful facts into evidence. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App.1988).

In the instant case, Jordan did not testify in his own behalf. Therefore, the only testimony received at trial came from Officer Theodore concerning Jordan's conduct indicating a level of intoxication sufficient to warrant arrest. During jury argument at the guilt/innocence phase, the prosecutor commented:

[PROSECUTOR:] He [Jordan] was given his is [sic] statutory warning about submitting a breath or blood sample. Mr. Marsh will have you believe, well, that's of no benefit to him if he gives a breath or blood sample. You mean to tell me that if that sample came back .03, for example, when the legal limit is way up to .10, that wouldn't be important for you to know that, that it was that much below what is considered legally intoxicated? I submit to you it was an extreme benefit if he's not intoxicated for you to know what that level is. *But he knows, and he is the only person who really knows. He knows*—

[DEFENSE COUNSEL]: I'm going to object to that, your Honor. Failure of the defendant to testify.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Ask that the jury be instructed to disregard the last remark by the counsel for the State.

THE COURT: The jury is instructed to disregard the previous comment by—

[PROSECUTOR]: Judge, am I being instructed not to argue that the defendant refused the test?

THE COURT: No.

[DEFENSE COUNSEL]: At this time, your Honor, we'd move for mistrial.

THE COURT: That's denied.

[PROSECUTOR]: *He refused. He didn't want you to know what that reading*

---

2. TEX.CODE CRIM.PROC.ANN. art. 38.08 provides:
   Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify

shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.
*Id.*

*was going to be. Why? Why didn't he want you to know?*

[DEFENSE COUNSEL]: I'm going to object to that, your Honor. It's more argument on the failure of the defendant to testify.

[PROSECUTOR]: And I disagree.

THE COURT: I'll overrule that objection. Go ahead. [Emphasis added.]

Jordan believes the prosecutor's remarks are similar to those made in *Valles v. State,* 817 S.W.2d 138 (Tex.App.—El Paso 1991, no pet.). As in the instant case, the prosecutor in *Valles* commented during jury argument about the defendant's failure to take a sobriety and breath test after being arrested for driving while intoxicated. *Id.* at 138–40. The prosecutor then asked "Why didn't he explain or someone explain?" According to the El Paso Court of Appeals, this later statement was harmful because the prosecutor deviated from discussing the defendant's failure to take a sobriety or breathalyzer test and directly commented on the defendant's failure to testify. *Id.* at 140. On that point, *Valles* is distinguishable based on the following analysis.

Viewing the language used in the instant case from the standpoint of the jury, we find the prosecutor's comments did not constitute a direct allusion to Jordan's failure to testify. *Livingston v. State,* 739 S.W.2d 311, 338 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Because the language used can be reasonably construed as referring to Jordan's failure to produce testimony or evidence from sources other than himself, reversal is not required. *Id.* In other words, the prosecutor's comments do not naturally and necessarily refer

to Jordan's failure to testify, but were directed at his refusal to consent to a breathalyzer or blood test.[3] The objections raised at trial focused on the accused's failure to testify. However, the more reasonable inference is that the prosecutor was merely commenting on Jordan's failure to take a breath or blood test.

■ Nonetheless, an argument can be made that the prosecutor's remarks were an indirect allusion to Jordan's failure to testify. For an indirect comment to constitute reversible error, it must call for denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Montoya,* 744 S.W.2d at 37. However, we find that the prosecutor's comment did not call for a denial of an assertion of fact under this standard. We fail to see how the reference to Jordan's silence on the date of the offense, *i.e.,* his refusal to submit to a breath or blood test, constituted an indirect comment on his failure to testify at trial. Accordingly, points of error one and two are overruled.

■ In his third point of error, Jordan contends the trial court violated Tex.R.Crim. Evid. 614(a) by failing to require the State to produce a prior recorded interview of a witness after that witness testified on direct examination. At trial, the State argued that the recording in question constituted work product and, therefore, did not require production. The trial court, apparently finding merit with the State's position, sustained the State's work product objection and denied Jordan's request.

This case presents important questions of construction and administration of Tex. R.Crim.Evid. 614.[4] That rule provides that

---

3. Breathalyzer and blood tests are not of a testimonial character; *see Forte v. State,* 759 S.W.2d 128 (Tex.Crim.App.1988); *Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986); therefore, this was a proper area for the prosecutor to comment.

4. The statute provides in full:

(a) **Motion for Production.** After a witness other than the defendant has testified on direct

examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

(b) **Production of Entire Statement.** If the entire contents of the statement relate to the

in a state criminal prosecution, after a witness for either party has testified on direct examination, the court, on motion of the opposing party, shall order the attorney for the non-movant to produce any "statement," as defined in the rule, in their possession that relates to the subject matter concerning which the witness has testified. The definition of "statement" in rule 614(f) pertinent to this case is: "(2) a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof." TEX.R.CRIM.EVID. 614(f)(2).

At trial, the State disclosed the existence of a tape-recorded interview between a prosecutor and Officer Theodore, the State's only witness, and conceded that a portion of the tape "may be discoverable." The State then requested the trial court review a transcript of the tape *in camera* and rule on which portions of the tape, if any, were discoverable. Upon reviewing the transcript, the trial court found no exculpatory evidence and ruled that the transcript be made available only if Officer Theodore relied on the tape in preparation for trial. Following the completion of Officer Theodore's direct examination, defense counsel renewed the request for a copy of the tape. In response, the trial court sustained the State's work product objection after determining that Officer Theodore did not use the recording in preparation for his testimony.

■ Without doubt, rule 614 contemplates that an audio-taped interview, like the one in question, qualifies as a "statement." Thus, once the witness who made the statement testifies, rule 614 mandates production upon request. All parties concede this fact; however, the State argues that rule 614 must yield when the work-product doctrine is applicable. Unfortunately, we can find no case law or legislative history outlining or interpreting the scope of rule 614 and its association with the work-product doctrine. Therefore, absent a pronouncement to the contrary from the Court of Criminal Appeals, we believe it appropriate to look to pre-rule cases for guidance. In addition, because rule 614 is substantively similar to the federal Jencks Act, 18 U.S.C.A. § 3500 (1985), federal case law may also be helpful. After reviewing the appropriate case law and statutory material, we hold that the tape-recorded interview was a "statement" under rule 614(f), that certain portions of the statement were producible and, therefore, the trial court erred in sustaining the State's work product objection.

subject matter concerning which the witness has testified, the court shall order that the statement be delivered to the moving party.

**(c) Production of Excised Statement.** If the other party claims that the statement contains matter that does not relate to the subject matter concerning which the witness has testified, the court shall order that it be delivered to the court in camera. Upon inspection, the court shall excise the portions of the statement that do not relate to the subject matter concerning which the witness has testified, and shall order that the statement, with such material excised, be delivered to the moving party. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of appeal.

**(d) Recess for Examination of Statement.** Upon delivery of the statement to the moving party, the court, upon application of that party, shall recess proceedings in the trial for a reasonable examination of such statement and for preparation for its use in the trial.

**(e) Sanction for Failure to Produce Statement.** If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.

**(f) Definition.** As used in this rule, a "statement" of a witness means:

(1) a written statement made by the witness that is signed or otherwise adopted or approved by him;

(2) a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof; or

(3) a statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury.

Ultimately, however, we find the error harmless.

■ Our holding should not be read, however, as the demise of the work-product doctrine. That doctrine is a practical one, grounded in the realities of our adversary system of criminal justice. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141, 154 (1975). At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which the attorney can analyze and prepare a client's case. *Id.; Owens–Corning Fiberglas Corp. v. The Honorable Neil Caldwell*, 818 S.W.2d 749, 750 (Tex.1991). In fact, the doctrine is equally applicable to both criminal and civil litigation. As the United States Supreme Court stated in *Nobles:*

> Although the work-product doctrine most frequently is asserted as a bar to discover in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170, 45 L.Ed.2d at 153.

■ However, the privilege derived from the work-product doctrine is not absolute. *Id.* at 239, 95 S.Ct. at 2170, 45 L.Ed.2d at 154. Accordingly, as Jordan charges in this case, the State has no right to use the work-product doctrine as a shield against disclosure of anything exculpatory in nature or mitigating in favor of the defendant. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218–19 (1963); *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex. Crim.App.1990), *cert. denied,* —— U.S. ——, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994), *over-*

*ruled on other grounds,* 884 S.W.2d 485 (Tex. Crim.App.1994). While the work-product doctrine plays a role in rule 614 issues, as the following analysis shows, it does not govern the absolute outcome.

**A. Pre-rule 614 Cases**

The Texas Rules of Criminal Evidence became effective in 1986. Before that time, access to prior statements of testifying witnesses was governed by *Gaskin v. State*, 172 Tex.Crim. 7, 353 S.W.2d 467 (1961). The *Gaskin* rule, as it became known, provided that when a State's witness made a report or had given a statement prior to testifying, the defendant, after a timely request, was entitled to inspect and use such prior available report or statement for cross-examination and impeachment purposes, even though the witness may not have used the instrument to refresh his memory. *See id.; Cullen v. State*, 719 S.W.2d 195 (Tex.Crim.App.1986). *See also Washington v. State*, 856 S.W.2d 184 (Tex.Crim.App.1993) (applying the *Gaskin* rule to defense witnesses).[5] If a party invoked the *Gaskin* rule, it was error for the trial court not to require production of the statement or report. *Cullen,* 719 S.W.2d at 196–97. However, harmfulness of the error was determined by considering whether the party seeking the statement was thereby denied effective cross-examination or possible impeachment of the witness. *See Pinson v. State,* 598 S.W.2d 299 (Tex.Crim.App. [Panel Op.] 1980).

Without question, the work-product doctrine played a role in determining the application of the *Gaskin* rule. *See, e.g., Washington,* 856 S.W.2d at 189; *Cullen,* 719 S.W.2d at 197–98; *Brandley v. State,* 691 S.W.2d 699, 713 (Tex.Crim.App.1985), *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990). In *Cullen,* for example, the Court of Criminal Appeals examined the application of the work-product doctrine to tape-recorded statements of witnesses. *See*

---

5. TEX.R.CRIM.EVID. 614(a) codifies and expands the *Gaskin* rule. *Enos v. State,* 889 S.W.2d 303, 305 (Tex.Crim.App.1994); *Washington,* 856 S.W.2d at 188 n. 4.

*Cullen,* 719 S.W.2d at 197–99.[6] The interaction between the *Gaskin* rule and the work-product doctrine was characterized as follows:

> We are cognizant as the State has pointed out in its brief that not every tape-recorded interview will be in such a format nor made with the requisite intent as to be subject to the *Gaskin* rule. Clearly, if a recording consists solely of a witness relating the events of the crime with no questions by the prosecutor, *Gaskin* will apply. At the other extreme, if the recording obviously contains only the work product of the prosecutor, such as comments by the prosecutor concerning his trial strategy and his opinions of the strengths and weaknesses of his case, the recording will not be obtainable under *Gaskin.* If a recording falls in between the two extremes, the trial court will have the duty to review the recording in camera and make a determination as to what a defendant is entitled to receive under *Gaskin.* Following such a determination, a copy of the tape with the non-Gaskin discoverable portions excised may be delivered to the defendant, and, if available, a transcript of the portion of the recording which falls within the *Gaskin* rule should be furnished to the defendant. Obviously a determination of the application of the *Gaskin* rule will have to be made on a case by case basis....

*Cullen,* 719 S.W.2d at 198.

In other words, when *Gaskin* was at issue, the trial court first determined whether the prior writing or recording was either (i) a statement or (ii) work product. If the writing or recording could be characterized as wholly work product, then it did not constitute a "statement" within the meaning of the *Gaskin* rule and did not require production. *Id.* at 199. If, on the other hand, the writing or recording qualified as a "statement" under *Gaskin,* the trial court had to further determine whether any portions of that statement included comments by the attorney that, if examined in isolation, would constitute work product. Such portions likewise did not require production and were duly excised from the writing or recording, thus leaving the core witness statement to be furnished to opposing counsel upon request. While the *Gaskin* rule itself did not explicitly except from production otherwise producible statements that constitute "work product," the pre-rule 614 cases reflect that the work-product doctrine did operate in concert with the *Gaskin* rule to shelter the mental processes, conclusions, and legal theories of the attorney. While the same is true under federal law, a slightly different analysis is conducted.

### B. The Jencks Act

Similar in substance to TEX.R.CRIM.EVID. 614, the Jencks Act, 18 U.S.C.A. § 3500 (1985),[7] provides that in a federal criminal prosecution, after a witness called by the United States has testified on direct examination, the court, on motion of the defendant, shall order the United States to produce any "statement," as defined in the Act, in the possession of the United States that relates to the subject matter as to which the witness has testified. The statute is a derivative of the common law rule set forth in the United State's Supreme Court decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).[8] In effect, the Act reaffirms *Jencks* in its holding that a defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the govern-

---

**6.** The *Gaskin* rule extended to both written and tape-recorded statements. *Cullen,* 719 S.W.2d at 197.

**7.** The Jencks Act was eventually incorporated into the Federal Rules of Criminal Procedure as Rule 26.2. *United States v. Shyres,* 898 F.2d 647, 657 n. 4 (8th Cir.), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990) (Rule 26.2 reads virtually verbatim to Rule 614).

**8.** In creating the rule in *Gaskin,* Texas courts initially "disclaim[ed] any intent to adopt the *Jencks* decision." *Gaskin,* 353 S.W.2d at 469. However, courts later acknowledge that the *Gaskin* rule parallels the *Jencks* rule. *See Sewell v. State,* 367 S.W.2d 349, 351 (Tex.Crim.App.1963) (op. on reh'g).

ment touching the events and activities as to which the government witness has testified at trial. *Goldberg v. United States,* 425 U.S. 94, 104, 96 S.Ct. 1338, 1345, 47 L.Ed.2d 603, 614 (1976).

In *Goldberg,* the petitioner moved, pursuant to section 3500(b), for an order directing the United States to deliver to the defense notes taken during an interview with a Government witness. Without first examining the writings, the trial judge sustained the Government's contention that the notes from conversations with a key witness were the work product of counsel. *Goldberg,* 425 U.S. at 97–98, 96 S.Ct. at 1342, 47 L.Ed.2d at 610. Attempting to construe the scope of section 3500, the United States Supreme Court found nothing in the Jencks Act or its legislative history that excepts from production otherwise producible statements on the ground that they constitute "work product" of Government lawyers. *Id.* at 101, 96 S.Ct. at 1343–44, 47 L.Ed.2d at 609. The Court also found no merit in the Government's argument that, without an exception, disclosure of statements taken by Government lawyers may undermine the policies that gave rise to the work-product doctrine.[9] However, the Court did conclude that:

> Proper application of the Act will not compel disclosure of a Government lawyer's recordation of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that "could not fairly be said to be the witness' own" statement. "If a government attorney has recorded only his own thoughts in his interview notes, the notes would seem both to come within the work product immunity and to fall without the statutory definition of a 'statement.'" Furthermore, if a witness has for some reason "adopted or approved" a writing containing trial strategy or similar matter, such matter would be excised under § 3500(c) as not relating to the subject matter of the witness' testimony or

direct examination. Thus, the primary policy underlying the work-product doctrine—*i.e.,* protection of the privacy of an attorney's mental processes—is adequately safeguarded by the Jencks Act itself.

*Id.* at 106, 96 S.Ct. at 1346, 47 L.Ed.2d at 615 (citations omitted). The Supreme Court's construction of the Jencks Act significantly parallels the state law analysis under the *Gaskin* rule. For that reason, we believe the foregoing discussion of both the *Gaskin* rule and the Jencks Act are sufficient to develop a reasonable construction of rule 614.

## C. Texas Rule of Criminal Evidence 614

Rule 614 provides that after a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order production of any statement of the witness that is in the non-movant's possession and that relates to the subject matter concerning which the witness has testified. The State disclosed a tape-recorded interview between Officer Theodore and a prosecutor conducted pre-trial. The trial court examined the tape *in camera* prior to Officer Theodore's testimony. At that time, the court made no explicit findings about which portions of the tape were discoverable. Later, when Jordan requested production of the tape, the trial court sustained the State's work product objection and denied Jordan's request. We too have reviewed the tape recording and find that it constitutes a "statement" as defined under rule 614(f)(2). Accordingly, we hold the trial court erred in denying Jordan's request.

Our holding is based on the following interpretation of rule 614. As with the Jencks Act, rule 614 does not except from production otherwise producible statements because they constitute work product. Consistent with the Supreme Court's finding in *Goldberg,* we believe that proper application

---

9. The work-product doctrine, recognized in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), reflects a strong "public policy underlying the orderly prosecution and defense of legal claims." *Id.* at 510, 67 S.Ct. at 393, 91 L.Ed. at 462. Thus, the court established a qualified privilege for certain materials prepared by an attorney "acting for his client in anticipation of litigation." *Id.* at 508, 67 S.Ct. at 392, 91 L.Ed. at 461.

of rule 614 will not compel disclosure of material that would otherwise be characterized as "work product." Therefore, when a party seeks to invoke production of a prior statement of a witness under rule 614, the following analysis should take place.

First, the trial court should determine whether the writing or recording constitutes a "statement" as that term is defined under 614(f).[10] That determination falls within the sound discretion of the trial court. If the trial court concludes that the writing or recording is not a statement, then rule 614 cannot mandate production. If, on the other hand, the trial court determines that the writing or recording is a "statement," then production is mandatory under 614(a) if: (1) the statement is in the opposing party's possession, either actual or constructive; and (2) the statement relates to the subject matter concerning which the witness has testified. Tex.R.Crim.Evid. 614(a). Proper application of this last requirement would prevent disclosure of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that could not fairly be said to be the witness' own statement. In other words, if the trial court determines *in camera* that all or a portion of the statement would otherwise constitute "work product," then it would not "relate to the subject matter concerning which the witness has testified." Contrary to the State's argument, this would abrogate the need to invoke the work-product doctrine in its traditional sense. Finally, if the trial court determines that portions of the statement do not relate to the subject matter of the witness' testimony, then 614(c) mandates that those portions be excised from the writing or recording and the remainder produced for the movant.

We hold that the tape-recorded interview constitutes a "statement," albeit a combination of witness comments and attorney "work product." Therefore, under rule 614(c), the

trial court should have excised those portions not related to the subject matter of Officer Theodore's testimony and required production of the remaining portions of the tape. Because the foregoing analysis was not conducted, we find error in the record. However, upon further review, we hold that error harmless in this instance. *See* Tex.R.App.P. 81(b)(2). Our examination of the contents of the interview reveals no inconsistencies with Officer Theodore's testimony as set forth in the record. Thus, there is no indication that Jordan was denied effective cross-examination of Officer Theodore absent access to the tape. Therefore, we hold beyond a reasonable doubt that the error did not contribute to Jordan's conviction or punishment. Point of error three is overruled.

The judgment of the trial court is affirmed.

---

**10.** The broad language used in 614(f) would seem to merit liberal application of the definitions.