**John Phillips WILLIAMS, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 02–95–236–CR to 02–95–240–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1997.

H.F. Rick Hagen, Denton, for Appellant.

Bruce Isaacks, Denton, for State.

Before LIVINGSTON, HOLMAN and ·RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

Appellant was convicted by a jury of three counts of aggravated sexual assault, two counts of indecency with a child, and one count of aggravated attempted sexual assault. The jury assessed Appellant's punishment at twenty years' confinement and a $10,000 fine on both counts of indecency with a child, twenty years' confinement and a $10,000 fine on each count of aggravated sexual assault, and life and a $10,000 fine on the attempted aggravated sexual assault charge. We affirm.

Appellant raises six points of error. Appellant's first four points of error contend that the trial court erred by failing to order the State to produce notes made by prosecutors during witness interviews after each witness testified on direct examination. Appellant's fifth point of error contends that we should reverse his attempted aggravated assault conviction because the factual basis upon which he was convicted varied from the factual basis of the indictment. Appellant's sixth point of error complains of the trial court's refusal to allow Appellant to call a former prosecutor as a witness.

## PROSECUTORS' NOTES

In his first four points of error, Appellant complains that the trial court erred by failing to order the State to produce prosecutors' notes made during interviews with witnesses after each witness testified on direct examination. At trial, the State objected to the production of the notes in question on the grounds that the notes are not witness statements and are work product. The court denied Appellant's request to conduct an *in camera* inspection of the notes, sustained the State's work-product objection, and refused Appellant's request to review the prosecutors' notes before cross-examining each witness. Appellant contends that the trial court's refusal to order the production of the prosecutors' notes after each witness testified on direct examination violated Texas Rule of Criminal Evidence 614. TEX.R.CRIM. EVID. 614.[1]

J.S., C.H., C.R., and K.B. were questioned by Appellant about the notes taken during their interviews with the prosecutors. J.S. testified that he met with three different people from the prosecutor's office a total of ten to twenty times. J.S. acknowledged that during "at least some of those conversations" with the prosecutors, the prosecutors took notes. Finally, J.S. acknowledged that after each interview where notes were taken, he approved or acknowledged that the notes were "an accurate summary or recitation" of what he said.

C.H. testified that he met with two prosecutors in preparation for Appellant's first trial.[2] C.H. acknowledged that one of the

---

1. Rule 614 provides in full:
   (a) Motion for Production. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
   (b) Production of Entire Statement. If the entire contents of the statement relate to the subject matter concerning which the witness has testified, the court shall order that the statement be delivered to the moving party.
   (c) Production of Excised Statement. If the other party claims that the statement contains matter that does not relate to the subject matter concerning which the witness has testified, the court shall order that it be delivered to the court in camera. Upon inspection, the court shall excise the portions of the statement that do not relate to the subject matter concerning which the witness has testified, and shall order that the statement, with such material excised, be delivered to the moving party. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of appeal.
   (d) Recess for Examination of Statement. Upon delivery of the statement to the moving party, the court, upon application of that party, shall recess proceedings in the trial for a reasonable examination of such statement and for preparation for its use in the trial.
   (e) Sanction for Failure to Produce Statement. If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.
   (f) Definition. As used in this rule, a "statement" of a witness means:
   (1) a written statement made by the witness that is signed or otherwise adopted or approved by him;
   (2) a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof; or
   (3) a statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury.
   *Id.*

2. Appellant first faced trial on the five felony counts underlying the instant case in December 1992. During the State's case-in-chief, the trial court declared a recess on its own motion and informed Appellant that the court had been informed that Appellant's defense attorney was disbarred in October 1992. The trial court then declared a mistrial and released the jury.

   After the trial court appointed Appellant new counsel, Appellant filed a writ of habeas corpus alleging that his prosecution was jeopardy barred because the trial court failed to: (1) consider less drastic alternatives than a mistrial; (2) admonish Appellant of his right to proceed to trial with his disbarred counsel, with new counsel, or *pro se;* and (3) give adequate consideration to Appellant's double jeopardy rights before declaring a mistrial. The trial court denied habeas relief and Appellant appealed the decision to this court. We affirmed the trial court's order denying habeas relief. *See Ex parte Williams*, 870 S.W.2d 343, 348 (Tex.App.—Fort Worth 1994, pet. ref'd) (holding that prosecution was not jeopardy

prosecutor's went over her notes from the interviews and asked him if they were accurate. C.H. testified that he confirmed to one of the prosecutors that the notes were accurate.

Similarly, C.R. testified that he met with the prosecutor approximately three times. C.R. acknowledged that during these interviews, the prosecutor was taking notes. After these interviews, C.R. and the prosecutor reviewed the notes taken during the interviews and he verified that the prosecutor had "written them down properly." C.R. acknowledged that he would then approve the prosecutor's notes as being what he said.

Finally, K.B. testified that he met with two different prosecutors a total of four to five times. K.B. acknowledged that during each of these interviews notes were taken. K.B. testified that both prosecutors reviewed their notes with him and he orally acknowledged everything was accurate.

Each of the prosecutors involved in Appellant's trials was also questioned about the notes taken during the interviews with J.S., C.H., C.R., and K.B. Nancy Jessee, the prosecutor from Appellant's first trial, testified that she took notes while interviewing the witnesses for trial and that she might have asked each of the witnesses questions at the end of each interview to make sure that she understood what they were trying to tell her. However, she was unable to recall ever reading a particular line in her notes and asking the witnesses if she had properly recorded what they had said. Similarly, Heidi Mason testified that she took notes when she interviewed the witnesses for this case, that she did not have any witness adopt her notes, and that her notes are simply her interpretation of what each witness told her. Finally, Jim Crouch testified that he took notes while interviewing witnesses for Appellant's trial, that he never reviewed his notes with the witnesses, and that his notes represented his

evaluation of the case and were not anything that the witnesses adopted.

Rule 614 mandates that after a witness other than the defendant has testified on direct examination, the court, on the request of the party that did not call the witness, shall order the production of any written statement made by the witness in the non-movant's possession that relates to the subject matter of the witness' testimony. TEX. R.CRIM.EVID. 614.[3] Once a party requests a witness statement, the trial court should determine whether the writing constitutes a statement as defined by rule 614(f). If the trial court determines that a writing or recording is not a statement, then rule 614 does not mandate production. On the other hand, if the trial court determines that the writing or recording is a statement, then production is mandatory if: (1) the statement is in the opposing party's possession, either actual or constructive; and (2) the statement relates to the subject matter that the witness has testified to on direct examination. *Id.*

■ First, the trial court must determine whether a requested writing constitutes a statement. This determination will not be disturbed absent an abuse of discretion. *Jordan v. State,* 897 S.W.2d 909, 918 & n. 10 (Tex.App.—Fort Worth 1995, no pet.); *see also Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Accordingly, we will sustain a trial court's determination that a defendant was not entitled to a requested writing under rule 614 on any ground that we view as reasonably supported by all the circumstances in the record. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g); *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *c.f. Nickerson v. State,* 645 S.W.2d 888, 891 (Tex.App.—Dallas), *aff'd,* 660 S.W.2d 825 (Tex.Crim.App.1983).

barred by mistrial granted after jury impaneled and sworn because manifest necessity required mistrial).

3. Rule 614 derives from the common-law rule announced in *Gaskin v. State,* 172 Tex.Crim. 7, 353 S.W.2d 467 (1961). In *Gaskin,* the defendant sought the production of offense reports prepared by arresting officers after they testified

for the State. *Gaskin,* 353 S.W.2d at 468. The Court of Criminal Appeals held that it was error to deny the requested production and created a rule entitling defendants to any available prior statement made by a witness that has testified for the State for the purpose of cross-examination and possible impeachment. *Id.* at 469.

Appellant contends that the trial court erred in refusing to order production of the prosecutors' notes because they became witness statements as defined by rule 614(f)(1) when each witness adopted or approved the prosecutor's notes. *See* TEX.R.CRIM.EVID. 614(f)(1). The State argues that there is nothing in each witnesses' testimony to indicate that the prosecutor's notes in question were anything more than the prosecutor's own summary of what the witness said during the interviews. Additionally, the State contends that testimony from each of the three prosecutors involved in the case specifically rebuts any evidence that the prosecutors' notes constitute witness statements.

The record on appeal includes a sealed envelope containing the prosecutors' case file and file notes from interviews with J.S., C.H., C.R., and B.J. Appellant, however, has failed to secure for the record on appeal the prosecutor's notes from the interview with K.B. At trial, Appellant requested that the court include the prosecutor's notes from the interview with K.B. in the record. The trial judge stated that he would take that request under advisement. Appellant did not later obtain a ruling on his request nor did he object to the trial judge's refusal to rule on his request. *See* TEX. R. APP. P. 52(a). Although it is apparent from a review of the index to the statement of facts that the prosecutor's notes from the interview with K.B. were not included in the record for appeal, the record does not reflect any efforts to incorporate these notes into the record nor does Appellant complain in a point of error of the trial court's refusal to include these notes in the record. *See, e.g, Moore v. State,* 509 S.W.2d 349, 352 (Tex.Crim.App.1974); *Zanders v. State,* 480 S.W.2d 708, 711 n. 4 (Tex.Crim. App.1972); *Johnson v. State,* 919 S.W.2d 473, 479 (Tex.App.—Fort Worth 1996, pet. ref'd); *Newsome v. State,* 829 S.W.2d 260, 265 (Tex. App.—Dallas 1992, no pet.).

Appellant bears the burden to provide a sufficient record to demonstrate error requiring reversal. TEX. R. APP. P. 50(d).

To determine whether Appellant was harmed by the trial court's refusal to mandate production under rule 614, we must determine whether Appellant was denied his right to effective cross-examination or possible impeachment of each witness. *Quinones,* 592 S.W.2d at 941; *Mendoza v. State,* 552 S.W.2d 444, 447 (Tex.Crim.App.1977); *Jordan,* 897 S.W.2d at 918. This determination requires: (1) a determination that the prosecutors' notes constitute a statement as contemplated by rule 614; and then (2) a review of the statement and the witness' testimony at trial to determine if Appellant was harmed. Having failed to provide a sufficient record to demonstrate harm, Appellant has failed to preserve any error for our review. *See* TEX. R. APP. P. 52.

Point of error number four is overruled.

The central issue common to Appellant's first three points of error is whether rule 614 mandates production of writings made by a person other than the testifying witness for the purpose of impeaching or cross-examining the testifying witness. Appellant has cited no case, nor has an exhaustive inquiry revealed one, in which the definition of a statement under rule 614 has been stretched to encompass notes taken by a prosecutor in preparation for trial that are requested at trial by a defendant for the purposes of impeaching or cross-examining a third-party witness. *Cf. Cullen v. State,* 719 S.W.2d 195, 198–99 (Tex.Crim.App.1986) (holding that tape-recorded interview between prosecutor and prospective witness is analogous to prosecutor's notes of interview with prospective witness and does not constitute a statement within meaning of *Gaskin* rule). Nor has Appellant cited to any authority stretching the definition of a written witness statement to a document not personally prepared by the witness. Rather, Appellant's argument assumes that a writing becomes a witness' statement under rule 614 as long as it is adopted or approved by the witness, regardless of who prepared the writing.[4]

4. Appellant cites *Jordan,* 897 S.W.2d at 918 n. 10, as support for his claim that the definition of a rule 614 statement is broad enough to include a prosecutor's notes made from an interview with a witness as the witness' own statement. In

*Jordan,* however, we interpreted the scope of rule 614's application to recorded statements as defined in 614(f)(2). *Jordan,* 897 S.W.2d at 914. Appellant's dependance on *Jordan* ignores the fact that the predicate required for the admission

■ Rule 614(f)(1) defines a witness statement as "a written statement made by the witness that is signed or otherwise adopted or approved by him." TEX.R.CRIM.EVID. 614(f)(1). The witness-statement rule has been limited to a previous written report or statement personally made by the witness testifying for the State. *E.g., Jenkins v. State,* 912 S.W.2d 793, 803–04 & n. 11 (Tex. Crim.App.1993); *Mendoza,* 552 S.W.2d at 448; *Howard v. State,* 505 S.W.2d 306, 309 (Tex.Crim.App.1974); *Dover v. State,* 421 S.W.2d 110, 111–12 (Tex.Crim.App.1967); *Artell v. State,* 372 S.W.2d 944, 945 (Tex. Crim.App.), *cert. denied,* 375 U.S. 951, 84 S.Ct. 439, 11 L.Ed.2d 312 (1963). Additionally, while a writing may have been personally prepared by a witness, rule 614 does not mandate production unless the writing has been signed or otherwise adopted or approved by the witness. *See Pondexter v. State,* 942 S.W.2d 577, 582 (Tex.Crim.App. 1996); *Guilder v. State,* 794 S.W.2d 765, 768 (Tex.App.—Dallas 1990, no pet.). Thus, a written statement is subject to mandatory production upon a timely request only if it is (1) "made by the witness," and (2) "signed or otherwise adopted or approved by him." TEX.R.CRIM.EVID. 614(f)(1); *see Cross v. State,* 877 S.W.2d 25, 26 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Jenkins,* 912 S.W.2d at 804 n. 11.

■ We cannot say the trial court abused its discretion in determining that the prosecutor's notes were not a "written statement made by the witness that is signed or otherwise adopted or approved by him." TEX. R.CRIM.EVID. 614(f)(1). It is clear from the witnesses' testimony that any writings prepared during the interviews were made by the prosecutors, not the testifying witnesses. Although the witnesses testified that on occasion they reviewed the prosecutors' notes to confirm their accuracy, it was reasonable for the trial court to conclude that what the witnesses approved as accurate was nothing more than the prosecutors' own summaries of what the witnesses said. *See Johnson,* 650 S.W.2d at 790 (holding that written interpretation of audio-taped conversation is not discoverable witness statement). Accordingly, the trial court did not abuse its discretion in refusing to order the State to produce the prosecutor's notes in question.

Points of error one, two, and three are overruled.

## THE INDICTMENT

In point of error number five, Appellant contends that the trial court erred when it denied Appellant's motion to dismiss the attempted aggravated assault charge of J.O. because the evidence established that Appellant was convicted on a charge not presented to the grand jury. In other words, Appellant contends that he is entitled to a judgment of acquittal because there is insufficient evidence to support his conviction for aggravated sexual assault of a child as charged in the indictment. Appellant complains that the trial court's denial of his motion to dismiss violated his right to due process.

During the instant trial, Appellant's second trial on the same indictments, J.O. testified in front of the jury, without objection, about an attempted aggravated assault that happened in J.O.'s home. J.O. moved with his parents and two sisters from Kansas to a home in Lewisville across the street from Appellant in the summer of 1983. Approximately two months after J.O. moved to Lew-

of videotapes and sound recordings is often lowered because they possess a greater indicia of reliability. *See Kephart v. State,* 875 S.W.2d 319, 321–22 (Tex.Crim.App.1994) (discussing the varying degrees of reliability of documentary evidence).

In contrast, Appellant claims that he was entitled to a written witness statement as defined in 614(f)(1). If the drafters of the rules intended the mere adoption or approval of any writing sufficient to convert a writing made by a third party into a discoverable witness statement, then there would be no assurance that the statement was actually "made by the witness." TEX.R.CRIM. EVID. 614(f)(1). We must give effect to all the words of a statute and may not treat any statutory language as surplusage. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Lake LBJ Mun. Util. Dist. v. Coulson,* 839 S.W.2d 880, 894 (Tex.App.—Austin 1992, no writ); *see also Carbide Int'l, Ltd. v. State,* 695 S.W.2d 653, 658 (Tex.App.—Austin 1985, no writ) (statutory language should not be held meaningless if result is avoidable by reasonable construction).

isville, Appellant began babysitting J.O. and his sisters at their home while their parents were at work. J.O. testified that one evening while his parents were at work Appellant came into his bedroom, removed his own clothes, removed J.O.'s clothes, and told J.O. he wanted to have anal sex with him. J.O. pushed Appellant away and told him no. J.O. testified that Appellant then grabbed him and acted like he wanted to hurt him. J.O. fled on his bicycle and returned home around 4:00 a.m. J.O. also testified that he saw Appellant naked almost every day.

Appellant now contends that this incident was an uncharged offense. Appellant did not, however, object at trial to the admission of this "extraneous offense" for lack of reasonable notice. See Tex.R.Crim.Evid. 404(b). Nor did Appellant make a motion with the court requiring the State to elect the specific acts of misconduct upon which it relied for Appellant's conviction for the attempted aggravated sexual assault of J.O. See, e.g., Crawford v. State, 696 S.W.2d 903, 906 (Tex. Crim.App.1985); Bates v. State, 165 Tex. Crim. 140, 305 S.W.2d 366, 369 (1957); Sledge v. State, 903 S.W.2d 105, 107 (Tex. App.—Fort Worth 1995, pet. granted).

Appellant then requested a hearing and called Nancy Jessee, the prosecutor from the first trial, to attempt to prove that the attempted sexual assault of J.O. that occurred in J.O.'s home was not supported by an indictment. Outside the presence of the jury and using a transcription of the State's opening statement from the first trial, Appellant developed the following offer of proof:

> Q: Ms. Jessee, the question I'm trying to get at is, the factual recitations set forth in Defense Exhibit R–1 [indictment for the attempted aggravated sexual assault of J.O. and a portion of the State's opening argument from the Appellant's first trial], to the best of your knowledge, those were the factual—or that was the factual basis of the indictment that is currently pending before this Court involving John Williams and [J.O.]; is that fair?

A: That is—It's fair to say it's a very general overview, because the last two pages are an excerpt from my opening statement, it looks like. And that, of course, was delivered by me before the jury; and I didn't have any notes in front of me, I don't believe. It was whatever came to my head that I recalled at that moment, and that's a very broad overview. It's by no means at all, and I would not say that it's—I'd have to check against my notes to see that its entirely accurate.

Q: Did [J.O.] ever describe an offense different—substantially different to you than the one reflected in the exhibits or the documents in Defense Exhibit R–1?
A: He described to me other events which probably could be considered and, I think, probably would be considered offenses, yes. And they were separate from this offense that happened in the stall on which the indictment is based.

Appellant contends that the testimony of the former prosecutor and J.O. clearly establishes that Appellant was convicted on a charge that was not supported by an indictment.

During Appellant's case-in-chief, however, Appellant testified on direct examination about an incident in a barn involving J.O. After Appellant denied that he had ever attempted to have anal sex with J.O., defense counsel asked Appellant about an incident that happened on an unspecified date in the barn behind his home. Appellant admitted that while in the barn he removed J.O.'s belt. Appellant claimed, however, that he removed J.O.'s belt with the intent of teaching J.O. "the purpose behind a belt in the first place." [5]

■ If an indictment facially alleges a complete offense, the State is bound by the theory alleged in the indictment, as are we in reviewing the sufficiency of the evidence to support a conviction. Montoya v. State, 906 S.W.2d 528, 529 (Tex.Crim.App.1995); Fisher v. State, 887 S.W.2d 49, 57 (Tex.Crim.App. 1994). Because Texas Law does not require

---

5. Appellant testified that he reached down, unsnapped J.O.'s western belt buckle, and pulled the belt from J.O.'s waistband. Appellant stated he then attempted to put J.O.'s belt around a horse's neck to demonstrate that the belt was designed as a means of keeping a strap of leather around one's waist so that it could be used on horses as a halter or lead rope.

indictments to be drawn with any greater specificity than general allegations of the place, approximate date, and the elements of the offense committed;[6] a defendant who allegedly has committed multiple violations of the same penal statute on the same victim may have difficulty in determining the factual allegations upon which the indictment is based. *See Sledge,* 903 S.W.2d at 106–08 (exploring dilemma faced by prosecution and defense under current laws regulating specificity of indictments).

■ Texas law does, however, provide criminal defendants protection from trial on a charge upon which the factual basis has not been presented to a grand jury while allowing the State the latitude permitted by the rules of pleading. When evidence proves two or more instances of misconduct, either of which fall within the allegations in the indictment, the defendant may file a motion with the court to force the State to elect the specific acts that it relies on before the case is submitted to the jury. *E.g., Crawford,* 696 S.W.2d at 906; *Bates,* 305 S.W.2d at 369; *Sledge,* 903 S.W.2d at 107. However, if the defendant fails to force the State to elect the specific facts upon which it relies for a conviction and the evidence proves two or more instances of misconduct that fall within the general allegations of the indictment, the evidence is sufficient for conviction if it proves either instance of misconduct. *Espinoza v. State,* 638 S.W.2d 479, 480–81 (Tex.Crim.App. 1982).

In the instant case, Appellant failed to demand that the State elect the facts upon which it relied for the attempted aggravated sexual assault of J.O. J.O.'s testimony about the offense that occurred in his home met every element of the offense alleged in the indictment and set out in the charge and was sufficient to sustain Appellant's conviction.

■ Even assuming that Appellant's offer of proof was the functional equivalent of forcing the State to elect the offense that occurred in the barn, or that the offer established this was the offense presented to the grand jury, we find the evidence sufficient to sustain Appellant's conviction for the offense that occurred in the barn. Appellant himself testified that he removed J.O.'s belt in the barn. See *Rankin v. State,* No. 1019–94, slip op. at 2, 1996 WL 6757, —— S.W.2d ——, —— (Tex.Crim.App.1996) (not yet reported) (holding that proof of any element may come from either party without eliminating requirement that defendant file motion for State to elect facts it relies upon for conviction). Despite Appellant's claim that his intention in removing J.O.'s belt was to teach J.O. the purpose behind wearing a belt, the jury could have inferred that Appellant removed J.O.'s belt with the specific intent to sexually assault J.O. from J.O.'s unchallenged testimony about the offense that occurred in his home. *See, e.g., Lewis v. State,* 676 S.W.2d 136, 139–41 (Tex.Crim.App.1984); *Albrecht v. State,* 486 S.W.2d 97, 100–01 (Tex. Crim.App.1972); *Valenciano v. State.,* 705 S.W.2d 339, 342 (Tex.App.—San Antonio 1986, pet. ref'd), *cert. denied,* 484 U.S. 861, 108 S.Ct. 177, 98 L.Ed.2d 130 (1987).

Accordingly, Appellant's fifth point of error is overruled.

### TESTIMONY OF FORMER PROSECUTOR

■ In Appellant's sixth point of error, Appellant complains that the trial court erred when it refused to allow Appellant to call Nancy Jessee, the prosecutor from Appellant's first trial on the same indictments, to ask her: (1) if J.O. told her that the attempted aggravated assault that was alleged in the indictment occurred in a barn; (2) whether the indictment for the aggravated sexual assault of J.O. was based on an incident that occurred in a barn; and (3) if J.S., C.R., B.J., and C.H. added to what they told her as compared to their statements to police. Appellant contends that the trial court's denial of his request to call Jessee as a witness violated his right to due process of law as guaranteed by the United States Constitution.

Appellant cites no applicable authority to indicate why the judge's refusal to allow Jessee to testify in front of the jury was error. What J.S., C.R., B.J., and C.H. told Jessee

6. *See* Tex.Code Crim.Proc.Ann. art. 21.02 (Vernon    1989) (listing requisites of indictment).

out of court was properly excluded as hearsay. TEX.R.CRIM.EVID. 801(d). Additionally, whether or not the prosecutor from Appellant's first trial told the jury that the indictment for the attempted aggravated sexual assault of J.O. was based on an incident that occurred in a barn was irrelevant because, as discussed above, the evidence was sufficient to sustain Appellant's conviction for the offense that occurred in the barn and Appellant failed to force the prosecutors in Appellant's second trial to elect the underlying facts upon which they sought conviction. Appellant's sixth point of error is overruled.

## CONCLUSION

We affirm Appellant's convictions because we find that: (1) the prosecutors' notes were not witness statements as contemplated by rule 614; (2) the evidence was sufficient to convict Appellant for attempted aggravated assault; and (3) the trial court properly excluded testimony from the former prosecutor.