Opinion issued May 26, 2005






 




In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00181-CR






DERRICK DUANE JONES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 906927






MEMORANDUM OPINION

 Appellant, Derrick Duane Jones, pleaded not guilty to the offense of murder. 
The jury found appellant guilty, and the trial court assessed punishment at 45 years
in prison. No motion for new trial was filed. Appellant presents four issues on
appeal. In his first three issues, appellant asserts that the trial court erred in denying
his trial counsel's requests for production of witness "statements" for use during
cross-examination. In his fourth issue, appellant claims his counsel provided
ineffective assistance of counsel. We affirm.

BACKGROUND

 At 1:04 a.m. on January 12, 2004, complainant, Michael Swain, drove a Ford
Explorer into the Mobil gas station at the intersection of T.C. Jester and West
Tidwell. At about the same time, two men in a white Mitsubishi Gallant pulled into
the gas station and parked in front of the front entrance. A heavy-set man, who was
a passenger in the Mitsubishi, argued with Swain and got a handgun out of the
Mitsubishi and pointed it at Swain. The heavy-set man put down the handgun and
engaged in a fist fight with Swain. As they were fighting, the driver of the
Mitsubishi, a tall, slim man, picked up the handgun and shot Swain in the back,
chased him as he ran, and shot him again in the back of the head, killing him.

 Rubra Mark LeBlanc, the manager of the Mobil station, and three other
witnesses, Victor Alvarez, Emanuel Martinez, and Roy Demouchette, testified that
they observed the argument and fight between the heavy-set man and Swain and saw
the tall, slim man shoot Swain. LeBlanc, Alvarez, and Demouchette identified
appellant at trial as the tall slim man who shot Swain. All four testified that they had
previously identified the heavy set man, Thomas Lamont Kennedy, from a
photospread. Alvarez and Demouchette testified that they had also picked out
appellant from a photospread.

 Thomas Lamont Kennedy testified that he was the heavy-set man who fought
with Swain at the Mobile station and that appellant was driving the white Mitsubishi
that night. Kennedy testified that he had taken a handgun out of the Mitsubishi, but
thought better of it and set it down. According to Kennedy, he passed out while being
beaten by Swain and did not see appellant shooting Swain, but, after they drove away
in the Mitsubishi, appellant told him that he "had to shoot Mike." 

 Appellant's wife, Angela Gilmore, testified as an alibi witness for the defense. 
According to her testimony, appellant had taken her to the hospital earlier that night
and was with her at the time Swain was killed. During cross-examination, she
admitted that she had rented a white Mitsubishi on the day Swain was killed, but
maintained that appellant had only driven the car when he took her to and from the
hospital and pharmacy. Appellant also testified that he had taken his wife to the
hospital and pharmacy in the rented Mitsubishi, and was at home with her at the time
Swain was killed. 

 DISCUSSION


Cross-examination of witnesses with their prior statements

 In his first three issues, appellant asserts that the trial court abused its discretion
in denying his trial counsel's requests to "cross-examine three witnesses on
statements they made to the police." Specifically, appellant complains of the trial
court's denial of his trial counsel's requests "under Rule 615 of the Rules of
Evidence" for the portions of "the police report where the officer has rendered into
writing any oral statement" that LeBlanc, Alvarez, and Martinez made. Appellant's
counsel made three separate requests, immediately after the State concluded its direct
examination of each witness. Appellant's counsel also requested that the State
produce a copy of a written statement LeBlanc said he had given to his employer. 

 The pertinent sections of Rule 615 of the Texas Rules of Evidence provide as
follows:

(a) Motion for Production. After a witness other than the defendant has
testified on direct examination, the court, on motion of a party who did
not call the witness, shall order the attorney for the state or the defendant
and defendant's attorney, as the case may be, to produce, for the
examination and use of the moving party, any statement of the witness
that is in their possession and that relates to the subject matter concerning
which the witness has testified.


. . . . 


(f) Definition. As used in this rule, a 'statement' of a witness means:


 (1) a written statement made by the witness that is signed or
otherwise adopted or approved by the witness:


 (2) a substantially verbatim recital of an oral statement made by the
witness that is recorded contemporaneously with the making of the oral
statement and that is contained in a stenographic, mechanical, electrical,
or other recording or a transcription thereof; . . . .


Tex. R. Evid. 615. At trial, the State indicated to appellant and the court that it had
the written statement LeBlanc had given the police, but was not in possession of the
statement he gave to his employer. Under Rule 615(a) the State is not required to
procure and produce a statement that it does not possess. Appellant admits that the
State tendered the written, sworn statements of LeBlanc, Alvarez, and Martinez, and
that the State made the audiotape of LeBlanc's statement available, but complains in
this appeal that his counsel had to cross-examine each of these witnesses without the
benefit of "the police detective's rendition" of the statement each had given. 

 Appellant did not ask the trial court to include the police report in the record
and does not complain in this appeal about the report's absence from the record. (1)
Appellant bears the burden to provide a sufficient record to demonstrate error
requiring reversal. Tex. R. App. P. 50(d). Without the requested portions of the
police report before us, we are not able to determine whether the police report
contained the "statements" of witnesses as defined by rule 615(f)(1), (2). See
Williams v. State, 940 S.W.2d 802, 805 (Tex. App.--Fort Worth 1997, pet. ref'd). 

 Having failed to provide a sufficient record to demonstrate whether the trial
court erred, appellant has failed to preserve any error for our review. See id. at 805-06; see also Tex. R. App. P. 52. We overrule appellant's first three issues.

Ineffective assistance of counsel

 In his fourth issue, appellant asserts two reasons why his trial counsel provided
ineffective assistance in the guilt-innocence phase of the trial. First, appellant
contends that his trial counsel "allowed the State to elicit testimony from the
appellant on cross-examination about extraneous un-adjudicated [sic] offenses, and
did not request an immediate limiting jury instruction, preventing appellant from
receiving a fair trial." Second, appellant asserts that, when his counsel sought a
continuance in order to recall Demouchette, he did not preserve error because he did
not tell the trial court the reasons why Demouchette's further testimony was
necessary. 

 The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Appellant must show that (1) counsel's performance was so deficient
that he was not functioning as acceptable counsel under the sixth amendment, and (2)
but for the counsel's error, the result of the proceedings would have been different. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. "Under Strickland, the defendant
must prove, by a preponderance of the evidence, that there is, in fact, no plausible
professional reason for a specific act or omission." Bone v. State, 77 S.W.3d 828, 836
(Tex. Crim. App. 2002). Our review of appellant's trial counsel's performance must
be highly deferential. Strickland, 466 U.S. at 690, 104 S. Ct. at 2065. We determine
the reasonableness of counsel's challenged conduct in context and view it as of the
time of counsel's conduct. Id. We are to assume a strategic motive if any can be
imagined and find counsel's performance deficient only if the conduct was so
outrageous that no competent attorney would have engaged in it. Bone, 77 S.W.3d
at 833 n.13. The policy behind this assumption is that "[i]ntensive scrutiny of counsel
and rigid requirements for acceptable assistance could dampen the ardor and impair
the independence of defense counsel, discourage the acceptance of assigned cases,
and undermine the trust between attorney and client." Strickland, 466 U.S. at 690,
104 S. Ct. at 2065. 

 Appellant asserts that his counsel was ineffective because he "allowed" the
State to cross-examine appellant on the following extraneous offenses: (1) appellant's
delivery of drugs in "another drug related case," which was pending; (2) appellant's
"jumping" the bond for a February 2003 arrest; and (3) appellant's involvement in the
February 2003 "drug related case" for which he was arrested. The testimony
appellant complains of was elicited in the following exchange between counsel for
the State and appellant:

Q: [State's counsel] When were you first charged with this case?


A: [appellant] April.


Q: But you - - of 2002; correct?


A: Right.


Q: You weren't incarcerated until February of 2003; is that correct?


A: No, I was incarcerated before then, made bond.


Q: You were incarcerated again in February, 2003; correct?


A: Right.


Q: Why?


A: Because of a drug related case.


Q: So you picked up a drug case while you were out on bond?


A: Yes, ma'am.


Q: You actually forfeited your bond on a murder case?


A; Yes, ma'am.


Q: So you jumped bond?


A: No, ma'am. I - - I missing - - I got my court dates wrong. The next
day when they called and said I missed, I came and turned myself in.


Q: And also because you were actually - - because you were actually
put in jail for the new case?


A: No, ma'am. I missed a court date that was scheduled for, I believe
the 18th, or I don't - - I don't actually recall. But I think it was the
18th, I missed that court date. I called my bonding company, I
called my lawyer, and I was advised to turn myself in because it was
just a misunderstanding. So that's what I did. 


Q: What part of town did you pick up the new drug case in?


A: I guess you would call it the northwest area.


Q: Do you remember the address?


[Appellant's counsel] Your honor, I'd object as not relevant to
material issue in this case.


[Court to State's counsel] Well, if you can show me the relevance, I'll
allow it. Otherwise, I sustain the objection.


Q: When did you pick up the new drug case?


A: February. February. The beginning of February.


. . . .


Q: Isn't it true you were arrested for delivery of [a] controlled
substance at 6500 Tidwell?


A: Arrest warrant was issued; right.


Q: I'm asking you, were you arrested for delivering drugs at 6500 - -
6500 Tidwell?


A: No, I was not.


Q: Where were you when you delivered the drugs?


A: That - - that is a case that is pending, that I am fighting.


Q: But that's when you were arrested; right?


A: No, ma'am.


Q: So there was another time you were charged with a drug case?


A: Yes, ma'am.


 [Appellant's council] I object to another drug case as not relevant to
any material issue in this case.


[Court] Sustained.


 The recited testimony demonstrates that appellant's counsel's objection to
testimony regarding "another drug case" was sustained, despite appellant's answering
"Yes, ma'am" before the objection was made. (2) Thus, appellant's complaint regarding
the second drug case is without merit because, as to evidence of that extraneous
offense, the trial court gave him the relief--sustaining his objection to that
evidence--that he now asserts he was denied. 

 Regarding the State's counsel's questioning appellant about the forfeiture of
his bond, it is well settled that a defendant's failure to appear at a previous setting of
his case and the forfeiture of his bond is properly admissible as evidence to show
flight, which can be construed as inferential evidence of guilt. Cantrell v. State, 731
S.W.2d 84, 93 (Tex. Crim. App. 1987) (noting that "flight, in the context of
bail-jumping, may be construed as evidence of guilt"); Aguilar v. State, 444 S.W.2d
935, 938 (Tex. Crim. App. 1969) (holding that trial court was not required to limit use
of evidence of bond forfeiture). The prosecutor's inquiry into the bond forfeiture was
a legitimate inquiry into a properly admissible area. Because an objection, or a
request for a limiting instruction, would have been properly denied, we cannot say
that appellant's counsel was deficient by failing to object to inquiry into the bond
forfeiture. 

 Appellant also asserts that his counsel's failure to object to, or request a
limiting instruction on the use of the testimony regarding his alleged delivery of drugs
in February 2003 "is not an issue of counsel's trial strategy." Finally, appellant
contends that "there is no reasonable trial strategy that could account for the error"
of his counsel in not providing the trial court with the reasons why Demouchette's
further testimony was needed. 

 In this case, the record is silent as to why appellant's trial counsel took, or
failed to take, the actions appellant asserts are proof of ineffective assistance of
counsel. Appellant has not overcome the strong presumption that his counsel's
conduct falls within a wide range of reasonable professional assistance and might be
considered sound trial strategy. See Bone, 77 S.W.3d at 836. To find that appellant's
counsel was ineffective based on the stated grounds would call for speculation, in
which we will not engage. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994); Lumpkin v. State, 129 S.W.3d 659, 665 (Tex. App.--Houston [1st Dist.]
2004, no pet.).

 We overrule appellant's fourth issue.

 CONCLUSION


 We affirm the judgment of the trial court. 


 Sam Nuchia

 Justice

 

Panel consists of Justices Nuchia, Jennings, and Alcala.


Justice Jennings, concurring.


Do not publish. Tex. R. App. P. 47.2(b). 

1. The written statement LeBlanc said he gave to his employer is also not
included in the record, nor did appellant seek its inclusion at trial. 
2. From the record before us, we cannot tell if appellant blurted out "Yes, ma'am"
without giving his counsel time to object, which the record reveals he did immediately
thereafter. We cannot, therefore, as appellant would have us do, assume that counsel erred. 
Additionally, as the discussion following explains, appellant must overcome the presumption
that, even if his counsel erred, there was a strategic reason for failing to object and for failing
to request a limiting instruction. This is an example of how the record on direct appeal is
generally inadequate to support these assertions.